**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 15 1998

Robert M. March

CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

H. ANTHONY CHAVEZ and UNITED
TRANSPORTATION UNION, LOCAL 1745,

        Plaintiffs,

vs.                                    No. CIV 97-1348 JP/RLP

CITY OF ALBUQUERQUE, et. al.,

        Defendants.

### RECOMMENDED DISPOSITION

THIS MATTER is before the Court pursuant to a referral by the Honorable James A. Parker

of Plaintiff's Motion for Reconsideration of Order Awarding Rule 11 Sanctions, filed March 30,

1998 (Doc. No. 23).[1] On September 8, 1998, I issued and Analysis and Order to Show Cause, which

is incorporated herein as Attachment "A." I recommended that Plaintiffs' Motion for

Reconsideration be granted because of the City of Albuquerque's ("City") failure to comply with the

procedures required by Rule 11 of the Federal Rules of Civil Procedure, and, further, that Judge

Parker's March 19, 1998 order be withdrawn.

Notwithstanding that recommendation, I found that sanctions could still be imposed against

attorney Paul Livingston ("Livingston") under Fed. R. Civ. P. 11(c)(1)(B), 28 U.S.C. § 1927, or

---

[1] Within ten (10) days after a party is served with a copy of this Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such recommendation. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the Recommended Disposition. If no objections are filed, no appellate review will be allowed.



under the Court's inherent power. A court, may on its own initiative impose Rule 11 sanctions if it finds, after giving a party notice and an opportunity to be heard, that a claim, defense or other legal contention advanced by that party is not warranted by existing law. Rule 11(c)(1)(B). For example, sanctions were deemed appropriate in instances where a "lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, [and] the conduct is objectively unreasonable and vexatious." *In Re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). Similarly, sanctions were imposed where counsel employed the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist." *Fred A. Smith Lumber Co., v. Edidin*, 945 F.2d 750, 753 (7th Cir. 1988)(citing *Hill v. Norfolk and Wester Ry. Co.,* 814 F.2d 1192, 1198 (7th Cir. 1987)).

I directed that attorney Livingston show cause why sanctions should not be imposed for his naming Edward Benavidez, a City personnel hearing officer, as a defendant in a lawsuit in light of clear Tenth Circuit precedent showing this to be improper. Livingston also was directed to address why he failed to file a response to the City's Motion to Dismiss, despite the admonition to respond to dispositive motions given to Livingston in another case by Chief Judge Conway. *Solid Waste Drivers' Assn. v. City of Albuquerque*, Civ. No. 96-1421 JC/LFG Memorandum Opinion, filed March 11, 1997. Livingston filed a response to my Order to Show Cause on September 23, 1998.

In the instant action, attorney Livingston pressed a claim against Defendant Edward Benavidez that was not warranted by existing law. Nor was Livingston seeking to extend, modify or reverse existing law or seeking to establish new law. When Livingston named Benavidez as a defendant, Livingston knew that the identical issue of whether a city personnel hearing officer could be sued under 42 U.S.C. § 1983 had previously been argued by him in other cases, and, in those

instances, the hearing officer was dismissed as a defendant because of absolute immunity. Moreover, Livingston named Benavidez as a defendant even though Livingston knew that a 10th Circuit case clearly held a hearing officer was immune from liability. *Saavedra v. City of Albuquerque*, 73 F.3d 1525 (10th Cir. 1996). Tenth Circuit holdings are binding precedent in this district. *Ute Indian Tribe of the Vintah and Ouray Reservation v. State of Utah*, 114 F.3d 1513, 1520-21 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 1034 (1998), *Heath v. Varity Corp.*, 71 F.3d 256, 257 (7th Cir. 1995).

Livingston goes into elaborate detail seeking to distinguish the case at bar from the Circuit's decision in *Saavedra*. These attempts are unavailing. Moreover, Livingston's response does not address the precedental value of *Saavedra*, and, in particular, the Tenth Circuit's grant of absolute immunity to the City's hearing officer. Likewise, Livingston makes no mention of the other district decisions cited to in the Court's September 9, 1998 analysis where defendants similarly situate to Benavidez were dismissed on the ground of absolute immunity. The closest Livingston comes in his explanation for not responding to the City's Motion to Dismiss is that he has repeatedly lost the argument in other cases. His rationale is somewhat startling. Simply put, it is Livingston's insistence in pressing a claim which he has repeatedly lost, and which he knows is not supported by law, that forms the basis for the Court's conclusion that Livingston engaged in unsound, unreasonable and vexatious litigation conduct. This conduct is santionable.

In evaluating whether Rule 11 sanctions are appropriate, the court considers the effect of the improper conduct on the litigation process in terms of time spent and expenses incurred; whether the person responsible for the misconduct is trained in the law; and the degree of sanctions necessary to deter similar activity in the future. 5A, Wright Miller, Fed. P. & Pro. 2d, § 1336 (1998 Pocket

Part).

Livingston was not just familiar with the district court and appellate rulings on this issue, he was counsel of record in the prior cases where *Saavedra* was applied and hearing officers were given absolute immunity. Each of these dismissals took place prior to the filing of the instant action. *See Chavez v. City of Albuquerque*, Civ. 96-1741 RLP/JHG; *Lara v. City of Albuquerque*, Civ. 95-366 LH/LCS, *Jinzo v. City of Albuquerque*, Civ. 96-1581 MV/LFG. When he named Benavidez as a party, Livingston was well aware that City hearing officers had been granted absolute immunity in Section 1983 litigation. Naming Benavidez as a party resulted in the City being put to the time and expense of motion practice to dismiss what Livingston knew was an improper claim. The City's motion practice would have been unnecessary had Livingston analyzed his proposed claims in the light of binding circuit precedent and prior district decisions. Livingston's litigation tactic needlessly increased the costs of litigation and delayed the ultimate disposition of the case in contravention of the goals of the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.* So, too, Livingston needlessly interfered with Benavidez' right to be free from vexatious and frivolous claims. Livingston sued Benavidez in his individual capacity, and, thus, until dismissal of the claims against him, there hung a cloud of uncertainty and worry that Benavidez' personal assets were at risk.

Livingston cannot argue that he didn't know better or that the complexities of the law caused him to misapprehend the circuit's decision in *Saavedra*. The Court takes judicial notice that in an unrelated Rule 11 sanction hearing held September 11, 1998, Livingston established that he is knowledgeable in law. Indeed, he considers himself to be an experts on *res judicata* and collateral estoppel. (See Attachment "B"). Thus, this is not an instance where one, untrained in law, acted out

4

of ignorance, mistake or inadvertence. Livingston's decision to hale Benavidez into court was a deliberate, intentional decision made with knowledge that the law didn't support the claim. Livingston's actions compelled the City to incur the additional expense of motion practice and consumed precious judicial resources. None of this was necessary. The Court concludes that Livingston's actions constituted an abuse of the judicial process.

The adversary system is further burdened by Livingston's failure to respond to dispositive motions. If Livingston does not oppose the relief requested, the rules of practice require that he consent to the proposed relief. Had Livingston complied with this practice requirement, time and legal expense could have been saved. The local rules for the District of New Mexico provide for the filing of a motion and submission of an approved order when the motion is uncontested. Here, because Livingston did not consent to the motion, opposing counsel had to bear the expense of preparing a motion and a memorandum of supporting authorities. Even then, Livingston needlessly delayed the court process by not filing a response. Even though Livingston remained silent, the Court, in turn, was required to devote time and to give consideration to the merits of the motion and issue a ruling. The Court construes Livingston's failure to respond as his acknowledgment and recognition that the City's requested relief was appropriate.

The Court is mindful of and, indeed, commends Livingston for his successful representation of clients with their Fourth and Fourteen Amendment claims against the City. The Court does not wish to chill an advocate's zeal, but a lawyer may not, in the name of advocacy, violate his responsibilities under the law, the rules of procedure or the Code of Professional Responsibility. Having concluded that Livingston's conduct was improper, the Court next considers an appropriate sanction. A monetary sanction is frequently utilized. However, having reviewed Livingston's

5

objections, it is not apparent that a simple fine will serve as an effective deterrent. Indeed, Livingston was previously sanctioned with a fine, to no lasting avail. *See, e.g.*, Senior Judge Campos' order in *Chavez v. Bennett Propp et al.*, CIV 96-1656 SC/JHG. Imposition of a fine, while proper, may serve only to cause economic hardship on Livingston without the benefit of a long-lasting change in the manner in which Livingston comports himself as a practitioner in federal court. Instead of a monetary sanction, I recommend that attorney Livingston be formally reprimanded by the U.S. District Court for his actions and that each judge in this district be apprised of the reprimand and reasons therefor. In addition, I recommend that Livingston be strongly admonished that if he persists in this type of misconduct in another case, the judicial officer to whom that case is assigned could impose punitive sanctions and will submit Livingston's name to the federal and state disciplinary committee for proceedings to determine his fitness to practice law.

Lorenzo F. Garcia
United States Magistrate Judge

COUNSEL FOR PLAINTIFFS:
Paul Livingston, Esq.

COUNSEL FOR DEFENDANTS:
Charles W. Kolberg, Esq.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
SEP 08 1998
CLERK

H. ANTHONY CHAVEZ and
UNITED TRANSPORTATION
UNION, LOCAL 1745,

        Plaintiffs,

vs.                                  No. CIV 97-1348 JP/RLP

CITY OF ALBUQUERQUE et al.,

        Defendants.

## ANALYSIS AND ORDER TO SHOW CAUSE

THIS MATTER came before the Court on Plaintiffs' Motion for Reconsideration of Order Awarding Rule 11 Sanctions, filed March 30, 1998 [Doc. 23]; upon Defendants' response, filed April 20, 1998; and upon Plaintiffs' reply, filed April 30, 1998. Plaintiffs move the Court to reconsider and reverse the March 19, 1998 order, which found that attorney Paul Livingston ("Livingston") violated Fed. R. Civ. P. 11(B)(2) by presenting a claim to the Court against Defendant Edward Benavidez ("Benavidez") that was either not warranted by existing law or was a frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. The Honorable James A. Parker referred the instant motion pursuant to Fed. R. Civ. P. 72(b) for report and recommendation, including an evidentiary hearing, if necessary.

### Background

Plaintiff H. Anthony Chavez ("Chavez") was a bus driver employed by the City of Albuquerque ("City"). Chavez was terminated after he tested positive on a drug test. He brought

32

## ATTACHMENT "A"

This was an incorrect interpretation of the order. Put another way, electronic filing does not obviate a party's need to respond within the time frame prescribed by the local rules, and the failure to respond is viewed as consent to the relief requested.

In any event, the Court accepted the City's recitation that no response had been timely served and granted the motion on March 19, 1998 for the same reasons set forth in the December 1997 order, to wit: the failure to respond constituted consent and because the motion had merit.

The Court's order specified that the Rule 11(b)(1) sanctions ran against attorney Livingston and not his clients. Finally, the Court set a hearing for March 30, 1998 to consider the nature of sanctions prescribed by Rule 11(c)(2).[1]

The issuance of the March 19, 1998 order resulted in a flurry of motions filed by Plaintiffs. For example, on March 23, 1998, Plaintiffs filed a response to Benavidez' motion for sanctions and, in the same pleading, a cross-motion for Rule 11 sanctions. On the eve of the hearing, Plaintiffs filed a Motion for Reconsideration of Rule 11 Sanctions. Notwithstanding the late motions filing, the hearing went forward. Attending the hearing were Livingston, his clients, and Rosemary Cosgrove for the City. The Court questioned Livingston at length about his failure to respond to the

---

[1] Rule 11(C)2 provides in pertinent part that "A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanctions imposed.

motion for dismissal and the motion for sanctions.

On April 1, 1998, the Court denied Plaintiffs' cross-motion for Rule 11 sanctions because of the requirement that a motion for Rule 11 sanctions be made separately and not combined as part of another motion. Here, it was made part of a responsive pleading. Plaintiffs subsequently filed a Notice of Withdrawal of its cross-motion and filed a notice that attorney Livingston's clients authorized and took part in the filing of the March 30, 1998 Motion for Reconsideration. In light of Plaintiffs' decision to go forward with the Motion for Reconsideration, the Court set a briefing schedule. Briefing was completed as of April 30, 1998. The matter was referred to the undersigned Magistrate Judge on June 15, 1998 for report and recommendation. On July 28, 1998, the parties attended a Rule 16 settlement conference before the Honorable Robert DeGiacomo and reached a compromise of the disputed claims. The terms of the settlement make clear that the Rule 11 issue remains ripe for adjudication and the result will not change the settlement.

## Standard of Review for Motion for Reconsideration

In *Sithon Maritime Company v. Holiday Mansion*, 177 F.R.D. 504 (D. Kan. 1998), the court described the standard for this type of motion:

> A motion for reconsideration is the opportunity for the court to (a) correct manifest errors of law or fact, (2) review newly discovered evidence, or (3) review a prior decision in light of a recent change in the law. Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination. A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider. The decision of whether to grant or deny a motion for reconsideration is committed to the Court's discretion. (citations omitted).

177 F.R.D. at 509.

Plaintiffs argue that the March 19, 1998 order was improvidently entered based on the Court's mistaken belief that Plaintiffs failed to respond and based on the belief that the procedural requirements of Rule 11 had been met. Plaintiffs posit that the City failed to comply with the safe harbor provision of Rule 11. Plaintiffs assert that the rule specifies that a motion for sanctions be served and that the responding party be given twenty-one days to either withdraw, correct or remedy the situation. Here, Plaintiffs contend that no such motion was served and that there has been no safe harbor period. Instead, the City gave notice via a letter and never served a sanction motion that would trigger the running of the safe harbor. Moreover, Plaintiffs posit the City did not even wait twenty-one days before serving its Motion to Dismiss on the ground of absolute immunity. Plaintiffs further argue that once the Court granted the Motion to Dismiss, it was too late for the City to seek sanctions on the same grounds, because with the dismissal of Benavidez as a party, Plaintiffs were no longer in a position to take corrective action. Plaintiffs submit that the timing of the sanctions' motion was contrary to the spirit of safe harbor. The City, on the other hand, contends that Plaintiffs' response was untimely, and that the City, in fact, complied with the Rule 11 safe harbor requirements.

The Court must first determine the proper weight to be given the October 21, 1997 letter from the City to Livingston advising of the City's intent to file a Rule 11 motion in the event that Benavidez was not dismissed from the case at bar. Fed. R. Civ. P. 11(c)(1)(A) provides that a motion for sanctions must be served on the opposing party before it is filed with the court. The motion should not be filed with the court unless the opposing party received twenty-one days to correct the error complained of and failed to do so. The Advisory Committee Notes to the 1993 Amendments to Subdivisions (b) and (c) provide illumination:

6

The revision leaves for resolution on a case-by-case basis, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided.

Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely . . . . Given the "safe harbor" provisions discussed below, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).

The rule provides that requests for sanctions must be made as a separate motion, i.e., not simply included as an additional prayer for relief contained in another motion. The motion for sanctions is not however, to be filed until at least 21 days (or such other period as the Court may set) after being served . . . . If during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions as the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11, under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions. To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

Thus, it is clear that sending a letter is not the equivalent of serving a motion. The rule and official commentary make it clear that there must be a motion. In addition, the motion must be served as soon as practicable after discovery of the potential pleading problem, and that the party be given twenty-one days to take the requested corrective steps before filing of the motion is

7

permissible. Indeed, Plaintiffs correctly characterize the October 21, 1997 letter as informal notice. Courts have routinely found that sending notice by way of letter, instead of serving a motion, is inadequate and Rule 11 sanction requests have been denied because the procedural requirements of Rule 11 were not met. *See Howell v. Nesbit*, 149 F.3d 1168 (4th Cir. 1998); *Sears, Roebuck & Co., v. Sears Realty Co, Inc.*, 932 F. Supp. 392, 408 (N.D.N.Y. 1996)(finding that letter by counsel requesting withdrawal of motion does not constitute sufficient notice within the meaning of safe harbor); *Weeks Stevedoring Co., Inc. v. Raymond Inter. Builders, Inc.*, 174 F.R.D. 301 (S.D.N.Y. 1997).

This situation is similar to proceedings described in *Lancaster v. Zufle*, 170 F.R.D. 7 (S.D.N.Y. 1996). The court there granted defendant's motion for summary judgment on July 29, 1996; and, on October 18, 1996, defendants moved for Rule 11 sanctions. The Rule 11 motion was based on earlier letters sent on March 28, 1996 to plaintiffs' counsel seeking dismissal of the same claims that were dismissed by summary judgment. The court denied the sanction motion because movant had not complied with Rule 11. Likewise, in *Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998), movant advised of potential Rule 11 violations through a letter and followed up by filing a motion to dismiss instead of a motion for Rule 11 sanctions. Opposing counsel did not respond to the motion to dismiss, so the court granted the motion. Movant, thereafter, filed for Rule 11 sanctions. The court denied the motion. Of import here, the court did so because, "it is abundantly clear that Imageware gave Carlson repeated notice of that deficiency. Unfortunately for Imageware, however, it did not follow the procedure required by Rule 11(C)(1)(A)." *Id.* at 710. The same holds true here. The City did not follow the procedures outlined in Rule 11.

Although the Court commends the City for giving Plaintiffs informal notice via the letter

8

about sanctions, the letter is not the same as a motion. Service of the motion triggers the twenty-one day safe harbor. It appears that Livingston took no immediate action in response to the letter. The Court is cognizant of the City's sense of frustration, but even if the letter had been a motion, the City needed to wait twenty-one days before filing what would have been a sanction motion as well as any dispositive motion. Instead, the City waited fourteen days before serving the Motion to Dismiss. The City obtained the relief requested and then sought Rule 11 sanctions. This is not a situation in which the City circulated the sanctions' motion, and, while it was still outstanding, the Court took judicial action on the pending dispositive motion. In that case, sanctions would still be available, pursuant to Rule 11(b)(1), notwithstanding that judicial action had been taken and corrective action would be futile. In *Powell v. Squire, Sanders & Dempsey*, 990 F. Supp. 541 (S.D. Ohio 1998), the court found the defendant's motion for Rule 11 sanctions timely, even though it was filed fourteen days after the court entered final judgment because defendant complied with the safe harbor provision of Rule 11 by serving the proposed motion for sanctions as well as a motion for summary judgment almost four months before dismissal. The court observed:

> All the rule requires is that the party be given the full and meaningful benefit of the twenty-one day period after service of the motion for sanctions and prior to the decision on the matter in contention in which to consider the motion and correct the problem.

*Id.* at 545. This was not done in the case at bar

In conclusion, the Court finds that Plaintiffs' Motion to Reconsider is well-taken. The City did not follow the procedures required by Rule 11. Sanctions were improvidently awarded against the Plaintiffs and the March 19, 1998 order should be withdrawn.

Our inquiry does not end here, however. While sanctions pursuant Rule 11(c)(1)(A) are not

9

appropriate, the Court may, on its own initiative, impose sanctions under Rule 11(c)(1)(B)[2], under 28 U.S.C. §1927[3], or under the Court's inherent power to sanction against attorney Livingston.[4] Situations where sanctions have been found appropriate include instances where a "lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *In Re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985), or when counsel employs the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist." *Fred A. Smith Lumber Co. v. Edidin*, 945 F.2d 750, 753 (7th Cir. 1988)(citing *Hill v. Norfolk and Wester Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987)). This aptly described what took place in the case at bar. While Livingston's clients joined in the motion for reconsideration, the Court finds that the sanctions discussed below are properly directed against attorney Livingston.

The Court directs Livingston to show cause, if any he has, why sanctions should not be imposed for naming Benavidez as a defendant in light of the Tenth Circuit's decision in *Saavedra*. (Attachment C). This is not a situation in which counsel was unaware of the Tenth Circuit's decision or, for that matter, of district court decisions dismissing similarly-situated defendants based

---

[2] Rule 11(c)(1)(B) provides that "[o]n its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney . . . to show cause why it has not violated subdivision (b) with respect thereto."

[3] A court may impose sanctions under 28 U.S.C. § 1927 against an attorney where that attorney has acted in an objectively unreasonable manner by engaging in a "serious and studied disregard for the orderly process of justice," or where a "claim [is] without a plausible legal or factual basis and lacking justification."

[4] The court's inherent power to sanction includes the authority to sanction where "a party has `acted in bad faith, vexatiously, wantonly, or for oppressive reason.'" *Hotel St. George Associates v. Morgenstern*, 819 F. Supp. 310, 322 (1993) (quoting *Chambers v. Nasco*, 501 U.S. 32, 111 S. Ct. 2123, 2132-33).

on the *Saavedra* decision. *See Chavez v. City of Albuquerque*, Civ. 96-1741 RLP/JHG, Memorandum Opinion, filed 4-4-97 (Attachment D); *Jinzo v. City of Albuquerque*, Civ. 96-1581 MV/LFG, Memorandum Opinion and Order, filed 4-24-97 (Attachment E); *Lara v. City of Albuquerque*, Civ. 95-366 LH/LCS, Memorandum Opinion and Order, filed 8-2-95 (Attachment F). In each of these cases, Livingston was counsel of record, and the knowledge of those other decisions, made well before October 1997, was imputed to him. He should be fully versed in the law as he was counsel of record in the precedent setting case. It appears from the March 30, 1998 hearing that Livingston disagrees with the Tenth Circuit's decision. However, he did not seek reconsideration of the decision by the Tenth Circuit or seek further review by the United States Supreme Court, and the *Saavedra* decision is binding precedent in this circuit.

The Court anticipates that Livingston will argue the unfairness of *Saavedra*, and that it serves as an injunction. However, as discussed above, it is the law not only of this circuit, but its holding regarding absolute immunity for personnel hearing officers has been noted by New Mexico state's judiciary. *See Chavez v. City of Albuquerque*, 123 N.M. 428, 434, 941 P.2d 509, 513 (Ct. App. 1997) (Attachment G). Livingston appears to ignore the significance of legal precedence and that the onus was on him as attorney of record in *Saavedra* to seek reconsideration or to appeal the Tenth Circuit's decision. It is not the responsibility of opposing counsel to continually go to the expense of moving to dismiss a party who should not have been named in the first instance. Similarly, it is an inefficient use of judicial resources to have to dismiss a party who never should have been named. It is Livingston's repeated attempts to name an improper party that call his litigation style into question.

Livingston should also address why no response was filed to the motion to dismiss. The

Court takes judicial notice that Livingston has been warned in the past about the necessity of responding to a dispositive motion. *See Solid Waste Drivers' Assn. v. City of Albuquerque*, CIV No. 96-1421 JC/LFG, Memorandum Opinion, filed March 11, 1997 (Attachment H).

Livingston's response to the order to show cause is due within fifteen days of date of entry of this order. The Court will then supplement this analysis before making a final recommendation to Judge Parker. The objection times contained in 28 U.S.C. § 636(h)(1) will not commence until the filing of the final analysis and recommended disposition.

Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PLAINTIFFS:
Paul Livingston, Esq.

ATTORNEY FOR DEFENDANTS:
Charles W. Kolberg, Esq.



**CITY OF**
**Albuquerque**

**Legal Department**
P.O. Box 2248 • Albuquerque, NM 87103
(505) 768-4500 • FAX (505) 768-4525

Martin J. Chavez, Mayor

Robert M. White, City Attorney

October 21, 1997

Mr. Paul Livingston
Attorney at Law
P.O. Box 90908
Albuquerque, New Mexico 87199

Dear Mr. Livingston:

On October 15, 1997, a lawsuit filed by you on behalf of Mr. H. Anthony Chavez and United Transportation Union, Local 1745, was served on Mr. Edward Benavidez. I represent Mr. Benavidez. The lawsuit asserts causes of action against Mr. Benavidez arising out of his position as a hearing officer for the City of Albuquerque.

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, you are asked to withdraw the complaint because it is a pleading unwarranted by existing law. Rule 11(b)(2). Mr. Benavidez is absolutely immune from the lawsuit filed by you. <u>Saavedra v. Albuquerque</u>, 73 F.3d 1525 (10th Cir. 1996).

If you do not withdraw the complaint and dismiss Mr. Benavidez, he will have no option but to pursue sanctions against you and your clients under Rule 11.

Very truly yours,

Rosemary A. Cosgrove
Assistant City Attorney

RAC/dlw
cc:  Mr. Edward Benavidez
     Mr. Victor Lopez

**EXHIBIT**
**A**

Attachment A

Good for You, Albuquerque!

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOE JINZO,

       Plaintiff,

  vs.

CITY OF ALBUQUERQUE et al.,

       Defendants.

APR 1 7 1997

CIVIL NO. 96-1581 MV/LFG

## NOTICE OF POTENTIAL VIOLATIONS

THIS MATTER is before the Court *sua sponte*. At the Rule 16 conference conducted on April 15, 1996, the Court advised Plaintiff's counsel that he has named improper parties in this lawsuit. For example, the City Employee Assistance Program and is not a suable entities. It has no separate legal identity apart from the City of Albuquerque. It is merely a vehicle through which the City of Albuquerque carries out its municipal functions. As such, it is an improper party and separate claims against it should be dismissed.

This situation is analogous to § 1983 lawsuits against a police department. The Tenth Circuit has held that when a police department is an integral part of city government and is merely the vehicle through which government fulfills its policing function, it may not be sued as a separate entity. Martinez v. Winner, 771 F.2d 424 (10th Cir. 1985), *modified in part*, 778 F.2d 553; *remanded on other grounds*, 475 U.S. 1138, *vacated on other grounds*, 800 F.2d 230; see also Post v. City of Fort Lauderdale, 750 F. Supp. 1131 (S.D. Fla. 1990); Williams v. Dayton Police Dept., 680 F. Supp. 1075 (S.D. Ohio 1987); Boren by and through Boren v. City of Colorado Springs, 624 F. Supp. 474 (D. Colo. 1985).

Attachment B

Similarly, in reference to Plaintiff's claims against the City Personnel Board and its chairman, the Court advised Plaintiff's counsel that the Tenth Circuit Court of Appeals specifically held that members of administrative boards who perform judicial functions are absolutely immune from liability when acting in their official capacities. Vakas v. Rodriguez, 728 F.2d 1293 (10th Cir.), cert. denied, 469 U.S. 981 (1984). Moreover, Plaintiff's counsel has been apprised of the Tenth Circuit's decision in Saavedra v. City of Albuquerque, 73 F.3d 1525 (10th Cir. 1996), where the court held that the City of Albuquerque Personnel Board was absolutely immune from suit. Similarly, district decisions in the District of New Mexico have uniformly upheld the concept of absolute immunity. See, e.g., Gary Chavez v. City of Albuquerque et al., CIV No. 96-1741 RLP/JHG, Memorandum Opinion, filed April 4, 1997; Robert Lara v. City of Albuquerque, CIV No. 95-0366 LH/LCS, Memorandum Opinion and Order, filed August 2, 1995.

Rule 11 provides that an attorney's signature on a paper submitted to the Court constitutes his certification that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the claims advanced are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and that factual contentions and allegations have evidentiary support.

Pursuant to the safe harbor provisions of Rule 11, Plaintiff has twenty-one days within which to act. Plaintiff is not obligated to voluntarily dismiss any claims, causes of action or defendants. However, should Plaintiff not act, and the Court subsequently determines on motion

or later that these claims were improper or that improper parties were sued, Defendants may request an award of costs and attorney fees.

_____
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Paul Livingston, Esq.

ATTORNEYS FOR DEFENDANTS:
Judy K. Kelley, Esq.
Carl J. Butkus, Esq.
William D. Winter, Esq.
Morton S. Simon, Esq.

Stanley SAAVEDRA, Plaintiff-Appellant,

v.

ALBUQUERQUE, The CITY OF; Albuquerque
Personnel Board; The City of
Albuquerque Employee Health Center; Arthur A.
Blumenfeld, Chief Administrative
Officer; Linda Logan-Condon, Former
Chairperson of the Personnel Board; T.
Zane Reeves, Personnel Hearing Officer,
Defendants-Appellees.

No. 94-2220.

United States Court of Appeals,
Tenth Circuit.

Jan. 17, 1996.

Firefighter/emergency medical technician who was discharged after he tested positive for drugs brought § 1983 action against city, personnel board, and personnel hearing officer (PHO). The United States District Court for the District of New Mexico, Juan G. Burciaga, J., 859 F.Supp. 526, entered summary judgment in favor of city, board, and PHO, and appeal was taken. The Court of Appeals, Barrett, Senior Circuit Judge, held that city had reasonable suspicion to test firefighter for drug use and thus, drug test undertaken by city did not violate firefighter's Fourth Amendment right to be free from unreasonable searches and seizures.

Affirmed.

## [1] FEDERAL COURTS ⊛⇒776
170Bk776
Court of Appeals reviews district court's grant of summary judgment de novo, applying the same legal standards employed by district court. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

## [2] FEDERAL CIVIL PROCEDURE ⊛⇒2470
170Ak2470
Summary judgment is appropriate when there is no genuine issue as to any material fact and movant is entitled to judgment as a matter of law. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

## [2] FEDERAL CIVIL PROCEDURE ⊛⇒2470.4
170Ak2470.4
Summary judgment is appropriate when there is no genuine issue as to any material fact and movant is entitled to judgment as a matter of law. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

## [3] CIVIL RIGHTS ⊛⇒214(8)
78k214(8)
Personnel hearing officer (PHO), city personnel board, and chair of board were entitled to absolute judicial immunity with respect to § 1983 action brought by firefighter who was discharged after he tested positive for drugs. 42 U.S.C.A. § 1983.

## [4] SEARCHES AND SEIZURES ⊛⇒23
349k23
Normally, search is considered reasonable under the Fourth Amendment only if it is supported by a warrant issued on probable cause and therefore, reasonable suspicion, standing alone, is insufficient. U.S.C.A. Const.Amend. 4.

## [5] SEARCHES AND SEIZURES ⊛⇒24
349k24
Even where warrant requirement is relaxed, existence of probable cause is required to make a full-scale search constitutional. U.S.C.A. Const.Amend. 4.

## [6] SEARCHES AND SEIZURES ⊛⇒42.1
349k42.1
No warrant nor probable cause is required by the Fourth Amendment when special needs, beyond the normal need for law enforcement, make warrant and probable- cause requirement impracticable. U.S.C.A. Const.Amend. 4.

## [7] SEARCHES AND SEIZURES ⊛⇒42.1
349k42.1
Court evaluates constitutionality of a "special needs" search, for which no warrant or probable cause is required, under the Fourth Amendment's more general requirement of reasonableness by balancing the need to search against the invasion which the search entails and whether particular search is reasonable depends on context within which search takes place; appropriate inquiry in each case is whether government's need outweighs individual's privacy interest. U.S.C.A. Const.Amend. 4.

## [8] SEARCHES AND SEIZURES ⊛⇒78
349k78
City had reasonable suspicion to test firefighter/ emergency medical technician for drug use and thus, drug test undertaken by city was not in violation of firefighter's Fourth Amendment right to be free from

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

Attachment C

unreasonable searches and seizures; firefighter was employed in safety-sensitive position, firefighter self-referred himself to city's employee health center for an evaluation, firefighter had warned his supervisors that he might become violent if provoked, and firefighter had lost his temper while in uniform and had engaged in public altercation with his girlfriend. U.S.C.A. Const.Amend. 4.

**[9] CONSTITUTIONAL LAW** ☜➡251.6
92k251.6
Essential elements of due process are notice and opportunity to respond. U.S.C.A. Const.Amends. 5, 14.

**[10] CONSTITUTIONAL LAW** ☜➡251.6
92k251.6
Opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. U.S.C.A. Const.Amends. 5, 14.

**[11] OFFICERS AND PUBLIC EMPLOYEES**☜➡
**72.12**
283k72.12
Tenured public employee is entitled to oral or written notice of the charges against him, explanation of employer's evidence, and opportunity to present his side of the story; to require more than this prior to termination would intrude to an unwarranted extent on government's interest in quickly removing unsatisfactory employee.

**[11] OFFICERS AND PUBLIC EMPLOYEES**☜➡
**72.16(1)**
283k72.16(1)
Tenured public employee is entitled to oral or written notice of the charges against him, explanation of employer's evidence, and opportunity to present his side of the story; to require more than this prior to termination would intrude to an unwarranted extent on government's interest in quickly removing unsatisfactory employee.

**[12] CONSTITUTIONAL LAW** ☜➡278.4(5)
92k278.4(5)
City which terminated employee after he tested positive for drugs did not deny employee his due process rights; city provided employee with pretermination notice and hearing where he was represented by president of his union, employee participated in city's posttermination grievance process which included opportunity to present

evidence and to cross-examine witnesses, and although defendant had opportunity to challenge validity of drug test during both his pretermination and posttermination hearings, he opted not to do so. U.S.C.A. Const.Amend. 14.

**[12] MUNICIPAL CORPORATIONS** ☜➡218(8)
268k218(8)
City which terminated employee after he tested positive for drugs did not deny employee his due process rights; city provided employee with pretermination notice and hearing where he was represented by president of his union, employee participated in city's posttermination grievance process which included opportunity to present evidence and to cross-examine witnesses, and although defendant had opportunity to challenge validity of drug test during both his pretermination and posttermination hearings, he opted not to do so. U.S.C.A. Const.Amend. 14.

**[13] FEDERAL COURTS** ☜➡762
170Bk762
Court of Appeals is free to affirm district court on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by district court.

**[14] ADMINISTRATIVE LAW AND PROCEDURE** ☜➡501
15Ak501
Principle that losing litigant deserves no rematch after a defeat fairly suffered in adversarial proceedings on an issue identical in substance to the one he subsequently seeks to raise holds true when court has resolved issue and should do so equally when issue has been decided by administrative agency, be it state or federal, which acts in judicial capacity.

**[14] JUDGMENT** ☜➡715(1)
228k715(1)
Principle that losing litigant deserves no rematch after a defeat fairly suffered in adversarial proceedings on an issue identical in substance to the one he subsequently seeks to raise holds true when court has resolved issue and should do so equally when issue has been decided by administrative agency, be it state or federal, which acts in judicial capacity.

**[15] ADMINISTRATIVE LAW AND PROCEDURE** ☜➡501
15Ak501
Constitutional claims raised in former city employee's

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

§ 1983 action in federal district court were barred under the common-law doctrines of collateral estoppel on those issues identical in substance to those considered during city's posttermination proceedings. 42 U.S.C.A. § 1983.

[15] MUNICIPAL CORPORATIONS ☞218(8)
268k218(8)
Constitutional claims raised in former city employee's § 1983 action in federal district court were barred under the common-law doctrines of collateral estoppel on those issues identical in substance to those considered during city's posttermination proceedings. 42 U.S.C.A. § 1983.

*1527 Paul S. Livingston, Albuquerque, New Mexico, for appellant.

Randy M. Autio, Assistant City Attorney, Albuquerque, New Mexico, for appellee City of Albuquerque.

Todd M. Stafford (David A. Rammelkamp with him on the brief) of Kelly, Rammelkamp, Muehlenweg & Lucero, Albuquerque, New Mexico, for appellees City of Albuquerque Personnel Board, Linda Logan-Condon and T. Zane Reeves.

Before BRISCOE, COFFIN [FN*] and BARRETT, Circuit Judges.

> FN* The Honorable Frank M. Coffin, Senior Judge, United States Circuit Court of Appeals for the First Circuit, sitting by designation.

BARRETT, Senior Circuit Judge.

Stanley Saavedra (Saavedra), plaintiff-appellant, appeals from orders of the district court granting summary judgment in favor of defendants-appellees, T. Zane Reeves, the Personnel Hearing Officer (PHO), the Albuquerque Personnel Board (Board) and the City of Albuquerque, New Mexico (City), and dismissing his 42 U.S.C. § 1983 civil rights complaint.

Facts

Saavedra commenced working for the City as a fire-fighter and emergency medical technician on or about September 20, 1982. His employment with the City was governed, in part, by the City's Merit System Ordinance (MSO) adopted pursuant to N.M. Stat. Ann. § 3-13-4 (1978), and a collective bargaining agreement between the City and the International Association of Firefighters Local 244 (Union). Under the collective bargaining agreement, "[a]ll actions involving discipline and terminations shall provide due process as described by the Merit System Ordinance and existing applicable law." (Appellee's Supplemental Appendix, Vol. 1 at 000063).

Section 2-9-25(D) of the City's MSO provided in part: management actions questioned by an employee which result in dismissal *1528 are designated as Class I grievances; PHO's have the authority to hear and render decisions in Class I grievances; a PHO's decision is reviewable by the Board; and, "[t]he decision of the Personnel Board shall be reviewable in District Court...." § 2-9-25(D)(5). Under the City's MSO, "safety-sensitive" employees, such as Saavedra, could be dismissed for justifiable cause, including testing positive for drugs.

In March, 1991, Saavedra suffered some personal and emotional problems. He self-referred himself to the City's Employee Health Center for an evaluation. Saavedra gave a urine sample. A specific gravity test applied to the sample indicated that it was essentially the same as water. Saavedra, at the request of City, gave a second urine sample several days later which tested positive for the presence of metabolites of marijuana.

On March 27, 1991, Albuquerque Fire Department Chief Montoya notified Saavedra in writing that he had tested positive for drug use in violation of the City's regulations. On April 2, 1991, Chief Montoya conducted a pre-termination hearing. Saavedra attended the hearing and was represented by Roman Velarde, his Union president. Saavedra was terminated on April 8, 1991, solely because he had tested positive for the presence of metabolites of marijuana in his urine. Thereafter, Saavedra filed a grievance challenging his termination.

Saavedra was provided with a post-termination grievance hearing in accordance with the City's MSO. PHO Reeves presided. During the course of the hearing, which was conducted on four one-day sessions in July, September, and October, 1991, Saavedra was represented by counsel. Saavedra appeared in person and was allowed to present evidence and to confront and examine adverse witnesses. The City also presented evidence.

Following the hearing, PHO Reeves prepared

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

detailed written findings of fact, conclusions, and recommendations to the Board in which he recommended that Saavedra's grievance be denied and his discharge be upheld on the basis of just cause. The Board upheld PHO Reeves' recommendations by a 5-0 vote. Although § 2-9-25(D)(5) of the City's MSO provided that "[t]he decision of the Personnel Board shall be reviewable in District Court ... [w]here the decision is in violation of applicable constitutional provisions or is otherwise illegal," Saavedra did not appeal to a New Mexico district court. Rather, he filed this action pursuant to 42 U.S.C. § 1983 in federal district court against PHO Reeves, the Board and the City seeking, inter alia, "declaratory and compensatory relief for violations of the Fourth and Fourteenth Amendments" and "relief for substantive and procedural due process violations arising from the pre-termination and post-termination administrative proceedings." (Appellant's Appendix, Vol. I at 000001).

PHO Reeves, Linda Logan-Condon, Chair of the Board, and the Board (hereinafter collectively referred to as "individual appellees") moved for summary judgment on Count IV, Negligent and Tortious Conduct, and Count VII, Punitive Damages. Individual appellees argued that the PHO and members of the Board who had adjudicated Saavedra's grievances were entitled to absolute immunity from personal liability for quasi-judicial acts. Individual appellees argued, alternatively, that their actions were shielded by qualified immunity.

The City moved for summary judgment on Count I, Violation of the Fourth Amendment, and Count II, Violations of Due Process Rights. The City argued that it had reasonable suspicion to believe that Saavedra was engaging in drug activity and that it was, accordingly, justified in compelling him to submit a urine sample. [FN1] The City also argued that Saavedra was provided with all the process he was due.

> FN1. Apparently, the City requested Saavedra submit a urine sample for a drug test pursuant to its reasonable suspicion drug testing policy. (Appellee City's Answer Brief at 5).

On July 27, 1994, the district court granted summary judgment in favor of the individual appellees on Counts IV and VII finding that since individual appellees were acting in their "adjudicative capacities and performing quasi-judicial acts, [they] are entitled

to absolute immunity." Saavedra v. City of Albuquerque, *1529 859 F.Supp. 526, 531 (D.N.M.1994). The district court noted that if Saavedra "is correct in his contention that the City's procedures failed to satisfy requirements of due process, he may still pursue relief against the City." Id.

On August 25, 1994, the district court entered a final judgment in which it granted the City summary judgment on Counts I and II. The court found, inter alia, that: the City had reasonable suspicion to test Saavedra for drug use after he had admitted smoking marijuana, exhibited erratic behavior, and threatened violent behavior toward his supervisors; Saavedra "cannot now be heard to complain that he wasn't given a chance to contest the outcome of the drug test when it was his own admission which confirmed its validity," (Appellant's Appendix, Vol. II at 000259); and the post-termination grievance process accorded Saavedra pursuant to the City's MSO provided Saavedra all the due process that he was entitled to under the Fifth and Fourteenth Amendments. The district court dismissed, sua sponte, the remaining counts.

### Issues

On appeal, Saavedra contends that the district court erred in: (1) granting absolute judicial immunity to the Board members; (2) granting the City summary judgment on Count I; and (3) granting the City summary judgment on Count II.

[1][2] We review the district court's grant of summary judgment de novo, applying the same legal standards employed by the district court. Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir.1995). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Hagelin for President Committee of Kan. v. Graves, 25 F.3d 956, 959 (10th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995).

### Disposition
### I.

Saavedra contends that the district court erred when it granted absolute immunity to the individual appellees.

Saavedra argues that the grant of absolute immunity

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

to the individual appellees was unnecessary, unwise and improper and "[b]ecause the Personnel Board Defendants lack any judicial or adjudicatory power or ability, the extension of absolute judicial immunity to them makes little sense and sets a very dangerous precedent." (Opening Brief of Plaintiff-Appellant at 7). Saavedra states that under Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978), absolute immunity is to be granted only in those "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business," and since the individual appellees did not meet that burden, they have not justified an entitlement to absolute immunity.

Saavedra further argues that: PHO's are private individuals who contract with the City and whose services consist primarily of taking testimony, conducting hearings and relaying the testimony in the form of a report to the Board; PHO's lack independence and fail to exercise any degree of independent judgment; the Board performs no judicial function; the Board has limited authority to approve, overturn, modify or remand; the City does not consider the Board's decisions binding since the City can appeal any adverse decision to a state district court; the powers of the Board, far from being judicial, are administrative and advisory; the Board performs no judicial functions; and the grievance resolution process set forth in the City's MSO was not at all adversarial.

Individual appellees respond that: they are entitled to absolute judicial immunity because their functions are similar to those in the judicial process; they properly exercised their adjudicative power and authority; their right to absolute immunity is firmly rooted in both Supreme Court and Tenth Circuit jurisprudence as set forth in Butz and Horwitz v. State Bd. of Medical Examiners of Colo., 822 F.2d 1508 (10th Cir.), cert. denied, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987); and the district court followed Butz and Horwitz in concluding that they were entitled to absolute immunity. We agree.

*1530 In granting individual appellees' motion for summary judgment, the district court found/ concluded:

Proceeding to the matter of contention, the next issue is whether Defendant Reeves and members of the Board are entitled to absolute immunity from liability.... In Butz v. Economou ... the Supreme Court held that federal hearing officers are examiners and administrative judicial officials are entitled to absolute immunity. The Court noted the longstanding absolute immunity protection accorded to judges.... and found the same rationale equally applicable to administrative judicial officers. 'Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities.' [Butz at 511, 98 S.Ct. at 2913].

* * * * * *

Absolute immunity applies, therefore, where (1) the defendant's duties and the procedures employed are functionally comparable to those of a court of law; (2) maintenance of the impartiality and effectiveness of the adjudicatory process in question requires eliminating any threat of personal liability; (3) the defendant's actions are more likely than other governmental actions to result in disappointed parties' institution of lawsuits; and (4) procedural safeguards exist and are adequate to correct or prevent erroneous or intentional constitutional violations. See Horwitz v. Bd. of Med. Examiners, 822 F.2d 1508, 1513 (10th Cir.), cert. denied, 484 U.S. 964 [108 S.Ct. 453, 98 L.Ed.2d 394] (1987). Application of these principles to the case at bar compels the conclusion that the Defendants' acts are shielded by absolute immunity.

The hearing before the PHO is adversary in nature. Employees have the right to counsel and the opportunity to present evidence, provide testimony, and cross-examine witnesses. The PHO is a professional hearing officer, is not considered an employee of the City, and is sufficiently independent. His decisions are insulated from political pressure. The PHO makes written findings of fact and issues a recommendation. The Board's review of the PHO's determination is limited to the record. The Board either affirms, denies, modifies, or remands the PHO's decision, similar to a reviewing court of law. The nature of the process is such that the terminated employee will often have a strong incentive to sue the PHO or the Board should either issue an adverse decision, and therefore a strong likelihood of lawsuits could deter others from desiring to perform these functions and might produce a hidden bias in favor of the aggrieved employee. In any event, constitutional violations can be corrected on appeal to the state district court. Notwithstanding Plaintiff's contrary assertions, all of the factors deemed dispositive in Butz are present here. The PHO and the Board must be free to exercise their discretion uninhibited by a looming

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

threat of personal liability.
859 F.Supp. at 529-31.

[3] We hold that the district court properly applied Butz and Horwitz in granting individual appellees absolute judicial immunity.

## II.

Saavedra contends that the district court erred when it granted summary judgment in favor of the City on his Fourth Amendment claims set forth in Count I of his complaint, i.e., that the suspicionless drug test-urinalysis, undertaken by the City, was in violation of his right to be free of unreasonable searches and seizures.

At the time Saavedra self-referred himself to the City's Employee Health Center, he was asked to give a urine sample. The specific gravity test applied to his first urine sample established that the sample was essentially the same as water. Saavedra gave a second urine sample several days later which tested positive for the presence of metabolites of marijuana. He was subsequently terminated solely because his urine sample had tested positive for the presence of metabolites of marijuana.

*1531 Following Saavedra's post-termination hearing, PHO Reeves concluded that the City had just cause to discharge Saavedra based on several aggravating factors, including the fact that Saavedra had "warned his supervisors that he might become violent if provoked and only a few months earlier [he] had lost his temper while in uniform and had engaged in a public alteration with his girlfriend," and that "a reasonable person assessing the preponderance of the evidence would conclude that [Saavedra] substituted or diluted his first urine sample with tap water." (Appellee's Supplemental Appendix, Vol. I at 000056).

In Count I of his complaint, Saavedra alleged that a "suspicionless drug test will not be upheld unless it is reasonable under the circumstances and the legitimate governmental interests involved are sufficiently compelling to outweigh the employee's right to privacy." (Appellant's Appendix, Vol. I at 000005-6). He further alleged that since the City was "unable to enunciate any real, valid, or reasonable purpose for testing its employees in general and Stanley Saavedra in particular.... the drug test [was] in violation of his right to be free of unreasonable

search and seizure as protected by the Fourth Amendment." Id. at 6.

In granting the City summary judgment on Saavedra's Fourth Amendment claims, the district court found, inter alia:

> When Plaintiff provided his first urine sample, he filled the cup with water in lieu of urine. Plaintiff does not dispute this fact, by affidavit or otherwise in his response to Defendant's motions for summary judgment.... the City directed Plaintiff to provide another urine sample. He did so and the test revealed the previous use of marijuana. When asked about the positive test result, Plaintiff admitted smoking marijuana.
>
> Plaintiff does not dispute these facts amounting to reasonable suspicion. Instead, Plaintiff contends that "reasonable suspicion testing should only ... have been based on observable phenomena, such as direct observation of drug use or possession and/or physical evidence of Plaintiff being under the influence...."
>
> * * * * * *
>
> Plaintiff's position might have merit in the case of public employees who are not performing safety-sensitive functions.... however ... Plaintiff does not dispute Defendant's characterization of Plaintiff as a safety-sensitive employee.
>
> * * * * * *
>
> The Court finds that the City had reasonable suspicion to test Plaintiff for drug use. Plaintiff admitted to smoking marijuana, and he exhibited erratic, and even threatened violent, behavior towards his supervisors.

(Appellant's Appendix, Vol. II at 000253).

[4][5] Normally, 'a search is considered reasonable under the Fourth Amendment only if it is supported by a warrant issued on probable cause; therefore reasonable suspicion, standing alone, is insufficient. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989). Even where the warrant requirement is relaxed, the existence of probable cause is required to make a full-scale search constitutional. New Jersey v. T.L.O., 469 U.S. 325, 340, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985). To this general rule requiring a search warrant on probable cause, or exigent circumstances justifying a probable cause based warrantless search, the Supreme Court has recognized a "special needs" exception. Skinner, 489 U.S. at

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

619, 109 S.Ct. at 1414.

[6][7] Under the exception recognized in Skinner, no warrant nor probable cause is required by the Fourth Amendment "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " Id. (quoting Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987)). We evaluate the constitutionality of a "special needs" search under the Fourth Amendment's more general requirement of reasonableness, National Treasury Employees Union v. Von Raab, 489 U.S. 656, 665-66, 109 S.Ct. 1384, 1390-91, 103 L.Ed.2d 685 (1989), by "balancing the need to search *1532 against the invasion which the search entails." Romo v. Champion, 46 F.3d 1013, 1017 (10th Cir.) (quoting Camara v. Municipal Court of San Francisco, 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967)), cert. denied, --- U.S. ----, 116 S.Ct. 387, 133 L.Ed.2d 309 (1995). Whether a particular search is "reasonable depends on the context within which [the] search takes place." T.L.O., 469 U.S. at 337, 105 S.Ct. at 740. Thus, the appropriate inquiry in each case is "whether the government's need outweighs the individual's privacy interest." Romo, 46 F.3d at 1017 (quoting Dunn v. White, 880 F.2d 1188, 1193 (10th Cir.1989), cert. denied, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990)). We assess whether the asserted government interest "justifies the privacy intrusions at issue absent a warrant or individualized suspicion." Skinner, 489 U.S. at 621, 109 S.Ct. at 1415.

In Skinner, the Court, after concluding that urinalysis testing of railroad employees for alcohol and drugs constituted the search of a person subject to the Fourth Amendment, held that the regulations authorizing the tests were reasonable even though there was no requirement of a warrant or reasonable suspicion that an employee might be impaired, because the compelling governmental interest outweighed the employee's privacy concerns. 489 U.S. at 633. The Court noted that it was undisputed that the covered employees were engaged in safety-sensitive tasks and that the restrictions necessary to procure the urine sample were quite minimal when compared to significant restrictions in freedom of movement the employees consented to as part of their jobs. Id. at 620, 624, 109 S.Ct. at 1414-15, 1417. See also Lucero v. Gunter, 17 F.3d 1347 (10th Cir.1994) (Holding that a random urine collection and testing of prisoners is a reasonable means of

combating the unauthorized use of narcotics and does not violate the Fourth Amendment).

In Von Raab, the Court reached a similar conclusion. There the Court upheld suspicionless drug testing of certain United States Customs Agents where there was no triggering event. 489 U.S. 656. The Court approved drug testing of Customs Service employees having a direct involvement in drug interdiction or those required to carry a firearm. Id. at 677, The Court weighed the government's interest on the one hand, against the Customs Service employees' expectations of privacy on the other, and struck the balance in favor of the government. Id.

There can be little doubt that the search conducted by the City in this case was executed pursuant to special needs independent of traditional criminal law enforcement. However, the district court did not rely upon or address the "special needs" standard; instead, the court relied upon the City's own reasonable suspicion drug testing policy and found that the City had reasonable suspicion to test Saavedra for drug use.

[8] Accordingly, we hold that the district court did not err in finding that the City had reasonable suspicion to test Saavedra for drug use, nor did the district court err in granting summary judgment in favor of the City on Saavedra's Fourth Amendment claims. We reject Saavedra's contentions that the City's claim of reasonable suspicion was not based on objective, specific observations or findings when, as here, it is uncontested that Saavedra was employed in a safety-sensitive position, Saavedra self-referred himself to the City's Employee Health Center for an evaluation, Saavedra had warned his supervisors that he might become violent if provoked, and Saavedra had lost his temper while in uniform and had engaged in a public altercation with his girlfriend. Significantly, Saavedra acknowledges that "[o]f course the Fourth Amendment allows reasonable suspicion drug testing of safety-sensitive employees." (Opening Brief of Plaintiff-Appellant at 28).

III.

Saavedra contends that the district court erred when it granted the City's motion for summary judgment on his Count II due process claims.

The City's substance abuse policy provided in part that if an "employee fails the substance abuse test, he/

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

she may appeal the results to City's Medical Review Officer whose determination regarding the results *1533 shall be final. A positive drug test ... shall result in the termination of the employee."

On appeal, Saavedra argues that "[b]ecause there was nothing [he] could do or say that would mitigate or alter the City's use of the positive test to terminate his employment, he was denied a meaningful hearing" and that the "opportunity to offer explanations for the positive test presented by the pre- termination and post-termination hearings was nothing more than an exercise in futility." (Opening Brief of Plaintiff-Appellant at 41). He also contends that: the City's hearing policy, whereby the grievant goes first as the moving party, violates common notions of adequate due process; the use of a non- rebuttable presumption (there was just cause for termination based on the positive test for metabolites of marijuana) placed an unconstitutional burden on him.

The City responds that: Saavedra's contentions fail factually; although Saavedra could have challenged the validity of the drug test at his pre- termination hearing or during the course of his four-day post-termination hearing, he opted not to do so; Saavedra's assertion that he was not allowed to challenge his termination is simply untrue and belied by the procedure provided him; and when PHO Reeves inquired into Saavedra's drug use, Saavedra admitted that he smoked marijuana just a few days prior to the test.

[9][10][11] The essential elements of due process are notice and an opportunity to respond, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985):

The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.... The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.... To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

[12] We hold that the district court properly applied Loudermill in granting the City's motion for summary judgment on Saavedra's due process claims. The City provided Saavedra with pre-termination notice and hearing where he was represented by the president of his Union. Thereafter, Saavedra participated in the City's post-termination grievance process which included hearings, the benefit of counsel, the opportunity to present evidence, and the opportunity to cross-examine witnesses.

Saavedra was terminated solely because he tested positive for marijuana use. Even though Saavedra had the opportunity to challenge the validity of the drug test during both his pre-termination and post-termination hearings, he opted not to do so. In this regard, the district court found that "the reason Plaintiff in all likelihood did not take such measures to challenge the positive test result is because he openly admitted to smoking marijuana. Plaintiff cannot now be heard to complain that he wasn't given a chance to contest the outcome of the drug test when it was his own admission which confirmed its validity." (Appellant's Appendix, Vol. II at 000259).

IV.

[13] The City argues that Saavedra's constitutional claims are barred by the doctrines of res judicata and collateral estoppel. Saavedra responds that res judicata and collateral estoppel principles do not preclude his constitutional claims because "[t]he District Court ruled only on the City's Motions for Summary Judgment on Counts I and II, and expressly found that the City's Motion for Summary Judgment on Collateral Estoppel ... [and] Res Judicata ... were moot." (Reply Brief of Plaintiff-Appellant at 14 n. 3). Although the district court did not reach this issue, it was raised by the City and "we are free to affirm a district court on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." United States v. Sandoval, 29 F.3d 537, 542 n. 6 (10th Cir.1994) (citation omitted).

As set forth, supra, § 2-9-25(D)(5) of the City's MSO provided that "[t]he decision of *1534 the Personnel Board shall be reviewable in District Court ... [w]here the decision is in violation of applicable constitutional provisions or is otherwise illegal." Notwithstanding this section, Saavedra did not appeal his termination to a state district court. Rather, he brought this action in federal district court seeking declaratory and compensatory relief for alleged violations of his Fourth and Fourteenth Amendment rights and substantive due process.

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

The City argues that under University of Tenn. v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (Elliott ), Saavedra's failure to appeal his discharge in state district court bars consideration of his constitutional claims in federal district court. In Elliott, when the University of Tennessee (University) informed Elliott, a black employee, that he would be discharged for inadequate work performance and misconduct on the job, Elliott requested an administrative hearing. Prior to the commencement of the hearing, however, Elliott filed a Title VII action in federal district court. The federal district court allowed the administrative proceedings to go forward.

The administrative proceedings resulted in an administrative law judge (ALJ) ruling, affirmed by a University Vice-President on appeal, that Elliott's proposed discharge was not racially motivated. Elliott did not seek state court review of the administrative proceedings. Rather, he returned to federal district court.

In federal district court, the University moved for summary judgment asserting that principles of res judicata prevented relitigation of claims of racial discrimination in federal court. The district court granted the University's motion and entered judgment in its favor. On appeal, the Sixth Circuit reversed, holding that the full faith and credit statute, 28 U.S.C. § 1738 [FN2] "does not require federal courts to defer to the unreviewed findings of state administrative agencies." Elliott v. University of Tenn., 766 F.2d 982, 990 (6th Cir.1985), aff'd in part and rev'd in part, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

> FN2. 28 U.S.C. § 1738 provides in part: Such acts, records and judicial proceedings or copies thereof, so authenticated shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.

On appeal, the Court held:
A state Administrative Law Judge determined that petitioner University of Tennessee ... was not motivated by racial prejudice in seeking to discharge respondent. The question presented is whether this finding is entitled to preclusive effect in federal court where respondent has raised racial discrimination claims under various civil rights laws, including ... 42 U.S.C. § 1983.

\* \* \* \* \* \*

[W]e hold that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate," ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts. (Emphasis added).
Elliott, 478 U.S. at 790, 799, 106 S.Ct. at 3221-22, 3226.

"To summarize the holding in Elliott, a federal district court in a proceeding under 42 U.S.C. § 1983 must give a state agency's factfinding the same preclusive effect to which it would be entitled in the state's court if the state agency" while acting in a judicial capacity resolved disputed issues of fact properly before it and the parties had an adequate opportunity to litigate the issues in dispute. Atiya v. Salt Lake County, 988 F.2d 1013, 1019 (10th Cir.1993) (emphasis original).

[14] Similarly, courts "have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991). The principle that "a losing litigant deserves no rematch after a defeat fairly suffered in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to *1535 raise.... holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal ... which acts in a judicial capacity." Id. at 107-08, 111 S.Ct. at 2169.

[15] Under Solimino, the constitutional claims raised in Saavedra's federal district court action are barred under the common-law doctrines of collateral estoppel on those "issue[s] identical in substance to" those considered during the City's post-termination proceedings. However, inasmuch as our appellate record does not include an adequate record of the administrative proceedings, we cannot determine what constitutional claims may have been asserted by Saavedra, if any. See King v. Unocal Corp., 58 F.3d 586, 587-88 (10th Cir.1995) (failure to include trial transcript necessary to review challenge to jury instructions); United States v. Janus Indus., 48 F.3d 1548, 1559 (10th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995) (failure to include, and reference to, portion of record wherein

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

objections, properly preserving issues for appeal, may
be found).

 AFFIRMED.

END OF DOCUMENT

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

CHAVEZ V. *CITY* OF *ALBUQUERQUE*, ET AL.

<DOCKET-NUM> 96-1741

<TYPE> CIVIL

<NAME> CHAVEZ V. *CITY* OF *ALBUQUERQUE*, ET AL.

<JUDGE> Richard L. Puglisi

<DATE-FILED> 1997/04/04

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARY CHAVEZ,

Plaintiff,

vs. CIVIL NO. 96-1741 RLP/JHG

*CITY* OF *ALBUQUERQUE*,

LAWRENCE RAEL, Chief Administrative

Officer, DEWEY CAVE, Solid Waste

Department Director, CITY PERSONNEL

BOARD and JAMES FOLEY, Chairman,

Defendants.

MEMORANDUM OPINION

THIS MATTER came on for consideration of the Defendants' City Personnel Board's and James Foley's Motion to Dismiss on Grounds of Absolute Immunity (Docket No. 10) and Defendants' Motion to Strike Plaintiff's Untimely Response to Motion to Dismiss (Docket No. 15). The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that Defendants' Motion to Dismiss on Grounds of Absolute Immunity is well taken and shall be granted.

The Court further finds that Defendants' Motion to Strike Plaintiff's Untimely Response to Motion to Dismiss shall be denied.

FACTUAL BACKGROUND

The Plaintiff filed his Complaint against the City Personnel Board and its chairman, James Foley, and other defendants on December 12, 1996. The Plaintiff was employed as a mechanic with the City's Solid Waste Management Department. The City terminated his employment after the State suspended his

Attachment D     

Waste Management Department. The City terminated his employment after the State suspended his driver's license following a DWI offense. Complaint at ¶ 1. In accordance with the City's Merit System Ordinance, Plaintiff filed a grievance before the City Personnel Hearing Officer. Id. at ¶ 12. The hearing officer recommended that the discipline be upheld. Id. at ¶ 13. On November 8, 1995, the City Personnel Board overturned the termination and reinstated Plaintiff. Id. at ¶ 14. When the Plaintiff attempted to return to work he was told he could not work as a mechanic because his license had been suspended, but that he would be assigned as a landfill attendant at the city dump. Id. at ¶ 15. The Plaintiff alleges the City has failed to obey the Board's reinstatement order. Id. at ¶¶ 17 and 22. The City appealed the decision of the City's Personnel Board. Id. at ¶ 26.

The Plaintiff claims the Board and Mr. Foley violated his civil rights, ( Counts 1 and 2), wrongfully terminated him (Count 3), retaliated against him (Count 4), committed breach of contract (Count 5), prima facie tort and intentional infliction of emotional distress (Count 6).

## ANALYSIS

Generally, motions to dismiss for failure to state a claim are viewed with disfavor and are therefore rarely granted. 5 Wright & Miller, Federal Practice and Procedure § 1357 (1990). In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and take the allegations asserted in the complaint as true. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

The district court should not grant a motion to dismiss for failure to state a claim unless it appears the plaintiff can prove no set of facts in support of his claim which would entitle him to any relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The defense of absolute immunity

is properly presented pursuant to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Sawyer v. County of Creek, 908 F.2d 663 (10th Cir. 1990).

The defendants City Personnel Board and James Foley claim they are immune from suit on grounds of absolute immunity. A government official may invoke one of two types of immunity from suit: absolute or qualified immunity. The Supreme Court has adopted a "functional" approach to immunity, so that whether an official is entitled to absolute or qualified immunity will depend on the function performed by that official in a particular context. Forrester v. White, 484 U.S. 219, 224 (1988); see also Archie v. Lanier, 95 F.3d 438 (6th Cir. 1996).

The question before the Court is simply whether the *City* Personnel Board and Mr. Foley, its chairperson, have absolute immunity for their decisions properly under their jurisdiction. This issue was presented squarely to the late Judge Juan Burciaga in the case of *Saavedra* v. *City* of *Albuquerque*, 859 F.Supp. 526 (D.N.M. 1994), aff'd, 73 F.3d 1525 (10th Cir. 1996). In that case, the Court held inter alia, that the Board and its chairperson were absolutely immune from suit. I can see no difference in the analysis attended to by Judge Burciaga and the analysis that would be appropriate in this case. Therefore, I find that the defendants, *City* Personnel Board and James Foley, are shielded by absolute immunity and the present cause against them shall be dismissed with prejudice.

An order in accordance with this opinion shall be entered.

_____

RICHARD L. PUGLISI

UNITED STATES MAGISTRATE JUDGE

(Sitting by designation)

Counsel for Plaintiff: Paul Livingston, Albuquerque, New Mexico

Counsel for Defendants: Bruce T. Thompson, Albuquerque, New Mexico and Willian D.

Winter, Albuquerque, New Mexicoo

# LORENZO F. GARCIA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO



FILED
at Santa Fe, NM

APR 24 1997

ROBERT M. MARCH, Clerk
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JOE JINZO,

    Plaintiff,

vs.

CITY OF ALBUQUERQUE, et al.,

    Defendants.

ENTERED ON DOCKET
4-24-97

CIV 96-1581 MV/LFG

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court for consideration of Defendants City of Albuquerque Personnel Board's and James Foley's Motion to Dismiss on Grounds of Absolute Immunity and Insufficient Process, filed January 24, 1997 [**Doc. No. 8**] and Defendant's City of Albuquerque Personnel Board's and James Foley's Motion to Strike Plaintiff's Untimely Response to Motion to Dismiss, filed February 28, 1997 [**Doc. No. 13** ]. The Court, having considered all briefs and being otherwise fully advised, finds that Defendants Motion to Dismiss is well-taken and shall be granted. Defendant's Motion to Strike shall be denied.

## BACKGROUND

The Plaintiff was employed as a Parks Maintenance Worker for the City of Albuquerque. Complaint at ¶ 4. The City terminated Plaintiff's employment after the State suspended his drivers license for a non-work related DWI offense. Id. at ¶ 5. The City subsequently reinstated Plaintiff on the condition that he agree to a demotion to Laborer and enter a treatment program. Id. at ¶¶ 6-13. A post-termination hearing was scheduled before a City Personnel Hearing Officer. ¶¶ 24-25. Because Plaintiff and his counsel did appear for the scheduled

Attachment E

hearing, the hearing officer deemed their nonappearance as a waiver of their opportunity to present evidence on Plaintiff's behalf. ¶ 30. The City Personnel Board upheld the decision of the hearing officer. Id. at ¶ 34. In Count I of his Complaint, Plaintiff asserts that the City Personnel Board and Mr. Foley violated his due process rights.

## STANDARD OF REVIEW

In determining whether to dismiss a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court follows "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989), cert denied 493 U.S. 1059 (1990). The Court must accept all factual allegations of the Complaint as true, and draw all reasonable inferences in favor of the plaintiff. Zilkha Energy Co. v. Leighton, 920 F.2d 1520, 1523 (10th Cir. 1990). The defense of absolute immunity may be properly raised in a motion to dismiss. Sawyer v. County of Creek, 908 F.2d 663 (10th Cir. 1990).

## DISCUSSION

The City Personnel Board and its chairman, James Foley, content that they are entitled to absolute immunity from liability in this suit for decisions made that are within their jurisdiction. This issue has been squarely addressed by the Tenth Circuit case of Saavedra v. City of Albuquerque, 73 F.3d 1525 (10th Cir 1996). In Saavedra, the Court held that the Board and its chairman were absolutely immune from suit for decisions made within their jurisdiction. Id. The Tenth Circuit's analysis and holding is clearly applicable to this case. Therefore, the

2

Court holds that the City Personnel Board and Chairman James Foley are absolutely immune from liability in this suit.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendants City of Albuquerque Personnel Board's and James Foley's Motion to Dismiss on Grounds of Absolute Immunity and Insufficient Process, filed January 24, 1997 **[Doc. No. 8]** is **GRANTED** and the Complaint shall by **DISMISSED WITH PREJUDICE** as to the City of Albuquerque's Personnel Board and James Foley.

**IT IS FURTHER ORDERED** that Defendants' City of Albuquerque Personnel Board's and James Foley's Motion to Strike Plaintiff's Untimely Response to Motion to Dismiss, filed February 28, 1997 **[Doc. No. 13 ]** is **DENIED**.

UNITED STATES DISTRICT JUDGE

LARA v. CITY *OF* ALBUQUERQUE

<DOCKET-NUM> 95-0366

<TYPE> CIVIL

<NAME> LARA v. *CITY* OF *ALBUQUERQUE*

<JUDGE> C. LeRoy Hansen

<DATE-FILED> 1995/08/02

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT LARA, (FILED 08/02/95)

Plaintiff,

vs. No. CIV 95-0366-LH/LCS

*CITY* OF *ALBUQUERQUE*, LAWRENCE

RAEL, Chief Administrative

Officer, in his official capacity,

CITY PERSONNEL BOARD, and PATRICK

BINGHAM,

Defendants.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Patrick Bingham's and *City* of *Albuquerque* Personnel Board's Motion to Dismiss on Grounds of
Absolute Immunity (Docket No. 6). Having reviewed the submissions of the parties, having considered the applicable law, and otherwise being fully informed in this matter, the Court FINDS that Defendant Patrick Bingham's and *City* of *Albuquerque* Personnel Board's Motion to Dismiss on Grounds of Absolute Immunity is well taken and should BE GRANTED.

In particular, the Court adopts the reasoning, in its entirety, of the late Honorable Juan G. Burciaga in *Saavedra* v. *City* of *Albuquerque*, et al.,
859 F.Supp. 526 (D.N.M. 1994). Defendants Patrick Bingham and the *City* Personnel Board are absolutely immune from liability for claims arising out of their quasi-judicial function of adjudicating personnel grievances for the *City* of *Albuquerque*. Id.

Attachment F

IT IS, THEREFORE, ORDERED that Defendant Patrick Bingham's and *City* of *Albuquerque* Personnel Board's Motion to Dismiss on Grounds of Absolute Immunity IS GRANTED.

_____

United States District Judgee

CITY OF ALBUQUERQUE, Petitioner-Appellee,
v.
Joseph CHAVEZ, Respondent-Appellant.

No. 17356.

Court of Appeals of New Mexico.

April 1, 1997.

City appealed from Personnel Board's decision, based on recommendation of hearing officer, to reverse city's termination of corrections officer. The District Court, Bernalillo County, W. Daniel Schneider, J., remanded for new hearing. After granting officer's application for interlocutory appeal, the Court of Appeals, Flores, J., held that: (1) Personnel Board's decision was not entitled to deference due to Board's lack of notice regarding city's allegations of bias on part of hearing officer; (2) city had right to fair hearing under city's merit system ordinance; and (3) city made sufficient showing that hearing officer should have disqualified himself for bias.

Affirmed.

**[1] ADMINISTRATIVE LAW AND PROCEDURE**
©683
15Ak683
Court of Appeals reviews appeals from administrative agency decisions under same standard as district court.

**[2] PRISONS** ©7
310k7
Personnel Board's decision to reverse city's termination of corrections officer, based on recommendation of hearing officer, was not entitled to deference, where city had sought to disqualify hearing officer for bias, and Board had never been put on notice of city's allegations of bias.

**[3] CONSTITUTIONAL LAW** ©278.4(5)
92k278.4(5)
City did not have constitutional right to fair grievance hearing before personnel hearing officer. U.S.C.A. Const.Amend. 14.

**[3] MUNICIPAL CORPORATIONS** ©218(8)
268k218(8)
City did not have constitutional right to fair grievance

hearing before personnel hearing officer. U.S.C.A. Const.Amend. 14.

**[4] CONSTITUTIONAL LAW** ©252
92k252
City is considered arm of state and, therefore, is not "person" within meaning of Fourteenth Amendment. U.S.C.A. Const.Amend. 14.
See publication Words and Phrases for other judicial constructions and definitions.

**[5] MUNICIPAL CORPORATIONS** ©220(8)
268k220(8)
Under city's merit system ordinance, city had right to fair grievance hearing before personnel hearing officer. Albuquerque, N.M., Rev. Ordinances ch. 3, art. 1, §§ 3-1-1 to 3-1-25.

**[6] ADMINISTRATIVE LAW AND PROCEDURE** ©314
15Ak314
Same test applies whether individual or state claims to have been denied fair hearing because of hearing officer's bias.

**[7] PRISONS** ©7
310k7
Under city's merit system ordinance, alleged bias of personnel hearing officer presiding over grievance hearing involving discharged city corrections officer rendered ultimate grievance decision arbitrary or capricious and/or otherwise illegal. Albuquerque, N.M., Rev. Ordinances ch. 3, art. 1, §§ 3-1-23(D)(5)(a- c), 3-1-25(D, E)

**[8] PRISONS** ©7
310k7
Evidence that attorney representing discharged city corrections officer at grievance hearing had filed separate lawsuit against the personnel hearing officer and that the hearing officer expressed concern for financial impact lawsuit would have on him, asked attorney to reconsider suing him and admitted to attorney that "quite frankly, you intimidate me" would cause reasonable person to have serious doubts about whether hearing officer could be fair, and therefore hearing officer should have disqualified himself.

**[9] ADMINISTRATIVE LAW AND PROCEDURE** ©314
15Ak314
Where reasonable person would have serious doubts

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

Attachment 6

about whether hearing officer could be fair, it is inappropriate for hearing officer to hear case, and hearing officer should disqualify himself or herself for bias.

**510 *429 Robert M. White, City Attorney, Bruce T. Thompson, Assistant City Attorney, Albuquerque, for Petitioner-Appellee.

Ira Bolnick, Fitzpatrick & Bolnick, Albuquerque, for Respondent-Appellant.

OPINION

FLORES, Judge.

1. Joseph Chavez (Chavez), a corrections officer for the City of Albuquerque (the City), was terminated from his employment. After a hearing, the hearing officer ultimately recommended, and the Personnel Board (the Board) approved, reversal of Chavez's **511 *430 termination. The City appealed to the district court, which found that the hearing officer "was not impartial," and remanded for a new hearing. On interlocutory appeal, we take this opportunity to address when, as a matter of law, a hearing officer should disqualify himself or herself on an issue of bias, and by what standard a court should review that decision for error. We affirm the district court and remand for a fair hearing.

I.    FACTUAL    AND    PROCEDURAL BACKGROUND

2. The City terminated Chavez from his position as a corrections officer at the Bernalillo County Detention Center (BCDC) for applying excessive force to a prisoner. In the early morning hours of July 13, 1994, Chavez was recorded on BCDC surveillance video running toward a prisoner from behind, striking the prisoner, and propelling the prisoner's upper body into the wall. At the time of this incident, the prisoner was on the phone with his back to Chavez, and was moving away from Chavez, apparently unaware of his approach. Several other guards became involved in the altercation that ensued. Following the struggle, the video shows Chavez carrying the prone prisoner by the handcuffs, shackled and face down, into a holding cell. In Chavez's report of the incident filed later that same night, he stated that he applied force because the prisoner "advanced toward me in an aggressive manner."

3. The director of BCDC terminated Chavez after an independently-contracted internal affairs investigation, and a pre-determination hearing based on Chavez's conduct, his prior record of similar conduct, and the conflict between the video record and Chavez's report of the incident.

4. Chavez challenged his termination. Pursuant to the City's Merit System Ordinance (MSO), see Albuquerque, N.M., Rev. Ordinances ch. 3, art. I, §§ 3-1-1 to -25 (1978 & Supp.1989), the grievance was set for a hearing before an independent personnel hearing officer (hearing officer). [FN1]   At the beginning of the hearing and in the context of discovery motions, the City moved to disqualify the hearing officer. The City based its motion both on the fact that Chavez's trial attorney, Paul Livingston, immediately prior to a discovery proceeding in the case, served the hearing officer with a "courtesy copy" of a separate lawsuit Livingston had filed against the hearing officer, and on Livingston's continued reference to that suit "throughout that hearing, every time that there was any kind of a real dispute." The City noted that this lawsuit against the hearing officer stemmed from his role as the hearing officer in a similar case, and specifically involved the hearing officer's rulings on discovery motions. The City also noted that the hearing officer (1) expressed concern for the personal financial impact the suit would have on him;   (2) asked Livingston to reconsider suing him;   and (3) admitted to Livingston that "[q]uite frankly, you intimidate me. I have never been sued before." The hearing officer denied the City's motion, responding "I know I can be objective." The City renewed its motion to disqualify at least three times over the course of the hearing and each time the hearing officer responded that he believed he could be fair.

> FN1. The City's MSO Grievance Resolution Procedure directs an employee aggrieved by termination first to discuss the issue with her or his supervisors, then make a formal written complaint to the Chief Administrative Officer.   MSO § 3-1-23(D)(1). If the employee is unsatisfied with the Chief Administrative Officer's decision, he or she may request a hearing from the Personnel Board, § 3-1-23(D)(2), which refers the matter to an independent Personnel Hearing Officer for hearing, § 3-1-23(D)(3).

5. After the hearing, the hearing officer presented to the Board a summary of his findings and conclusions, and recommended that the Board reverse the City's decision to terminate and instead reinstate Chavez

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

with a sixty-day suspension. The hearing officer made no reference to the City's repeated motions for his disqualification in his report and recommendation to the Board. Further, the stenographic record of the hearing was not fully transcribed until after the Board had approved the hearing officer's recommendation. Cf. Littlefield v. State ex rel. Taxation & Revenue Dep't, Motor Vehicle Div., 114 N.M. 390, 395, 839 P.2d 134, 139 **512 *431 (Ct.App.1992) (board that had access to record and concurred with hearing officer's recommendation not required to have reviewed the record in order to meet due process requirements).

6. The City appealed to the district court, arguing that the decision to reverse Chavez's termination was arbitrary and capricious, and alternatively, that the hearing officer should have been disqualified for bias. The district court reviewed the entire record, and found that the hearing officer "was not impartial," and remanded for a new hearing before an unbiased hearing officer. The district court then certified the case for interlocutory appeal, and this Court granted Chavez's application for an interlocutory appeal.

## II. DISCUSSION

7. This case involves two intertwined issues. The first issue relates to the standard of review this Court should apply when reviewing an administrative adjudication for possible bias. The second issue pertains to the question of what constitutes bias to warrant remand for a new hearing. The second issue is complicated by the fact that the tests New Mexico courts have developed to determine when bias in an administrative tribunal is impermissible have been constructed for the purpose of protecting the constitutional right to due process, whereas in this case the City, which has no such constitutional right, seeks protection from bias.

### A. Standard of Review

[1] 8. We review appeals from administrative agency decisions under the same standard as the district court. See Downtown Neighborhoods Ass'n v. City of Albuquerque, 109 N.M. 186, 189, 783 P.2d 962, 965 (Ct.App.1989). Here, the MSO specifies that the Board's decisions are reviewable in the district court:

   (a) Where the decision is arbitrary or capricious and is unsupported by substantial evidence; or
   (b) Where the decision is in violation of applicable constitutional provisions or is otherwise illegal; or

   (c) Where the decision is in excess of the statutory authority or jurisdiction of the Board.
   MSO § 3-1-23(D)(5)(a)-(c).

### B. Deference to Administrative Board

[2] 9. The parties dispute the proper standard of review; specifically, they dispute how much, if any, deference this Court should give to the decision of the Board and hearing officer. Chavez argues that this Court should give deference to the decision of the Board to reverse the City and reinstate Chavez. The City argues that because the issue of bias was not presented to the Board, deference to the Board is misplaced. We agree with the City.

10. In this case, the decision under review is the decision of the Board to adopt the hearing officer's recommendation and reinstate Chavez. The record reveals that the Board was never put on notice of the City's allegations of bias. Although the City at numerous times raised the motion to disqualify the hearing officer, the hearing officer made no reference to this issue in his statement of the case, his findings and conclusions, or his recommendation to the Board. The MSO prohibits the Board from considering any information beyond what is submitted by the hearing officer. See MSO § 3-1-23(D)(4)(a). Although the Board had authority to require the hearing officer to submit a complete transcript, see MSO § 3-1-23(D)(3) (hearing officer shall transmit to personnel board at least a summary record of the hearing, findings of fact, and his or her recommendation); MSO § 3-1-23(D)(4)(a)(3) (board may remand matter to hearing officer for further hearing or a more detailed report ), the Board was not required to do so if it followed the hearing officer's recommendation. Compare Littlefield, 114 N.M. at 395, 839 P.2d at 139 (board that had access to record and concurred with hearing officer's recommendation not required to have reviewed the record in order to meet due process), with Board of Educ. v. New Mexico State Bd. of Educ., 106 N.M. 129, 131, 740 P.2d 123, 125 (Ct.App.1987) (fair hearing requires that board review the hearing officer's record before adopting a decision contrary to hearing officer's recommendation because **513 *432 credibility of witnesses key to Board's decision). Here, because the Board had no occasion to consider bias, it makes no sense to defer to the Board when reviewing that issue. Accordingly, our review for bias is conducted without deference to the Board.

## C. Was the City Denied a Fair Hearing Because of Hearing Officer Bias?

11. The City argues that bias on the part of the hearing officer denied the City a fair hearing. This case differs from the line of cases dealing with allegations of bias in administrative proceedings in New Mexico, because those cases have each involved an aggrieved person alleging denial of a fair hearing by an arm of the state. See, e.g., Santa Fe Exploration Co. v. Oil Conservation Comm'n, 114 N.M. 103, 835 P.2d 819 (1992) (oil drillers appealed commission's decision to impose production restrictions based in part on possible commission member bias); Lujan v. New Mexico State Police Bd., 100 N.M. 149, 667 P.2d 456 (1983) (state police employee appealed police board decision upholding his termination based on chairman's possible bias); Reid v. New Mexico Bd. of Exam'rs in Optometry, 92 N.M. 414, 589 P.2d 198 (1979) (optometrist appealed board revocation of his license based on possible board member bias). In these cases, New Mexico courts have used as their analytical starting point the constitutional right to due process. Santa Fe Exploration Co., 114 N.M. at 109, 835 P.2d at 825; Lujan, 100 N.M. at 150, 667 P.2d at 457; Reid, 92 N.M. at 415-16, 589 P.2d at 199-200. The Due Process Clause of the Fourteenth Amendment guarantees that a person like Chavez with interests terminated by an arm of the state receive a fair, adjudicative- style hearing. Reid, 92 N.M. at 416, 589 P.2d at 200; Board of Educ., 106 N.M. at 132, 740 P.2d at 126. The inquiry New Mexico courts have shaped to determine when a hearing is or is not fair due to bias is therefore designed for the purpose of protecting a person's constitutional right to a fair hearing.

[3][4] 12. The City, however, is considered an arm of the state, and not a "person," within the meaning of the Fourteenth Amendment. See U.S. Const. amend. XIV; see also John E. Nowak et al., Constitutional Law 415-16 (2d ed. 1983) ("persons" protected by fourteenth amendment consist of individuals, including aliens and corporations); id. at 415 (fourteenth amendment protects individuals by restricting power of states, and "all lesser governmental units such as county, city, or other local governments are considered to be a part of the state"). As such, the City has no constitutional right to due process, and therefore no constitutional right to a fair hearing.

[5][6] 13. However, the city is nonetheless guaranteed a fair hearing by statute. The MSO, in its terms and its structure, and the rules promulgated under it for the conduct of grievance hearings, are framed to protect both an aggrieved individual's due process rights and the City's strong public policy interest in a fair and expeditious process for terminating "problem" employees. The City is entitled to a fair hearing both to ensure the smooth functioning of government and to, as here, ensure that agents of the City do not violate the civil rights of other individuals. We hold that the same test applies whether an individual or the State claims to have been denied a fair hearing because of bias.

[7] 14. The City's MSO, adopted pursuant to NMSA 1978, Section 3-13-4 (Repl.Pamp.1995), is a comprehensive statutory scheme designed to insulate the grievance decision-maker from improper interference. See MSO § 3-1-23(A)(2) ( "The purpose of the Grievance Resolution Procedure is to secure, in an atmosphere of courtesy and cooperation, a prompt and equitable resolution at the lowest possible administrative level of problems which may arise within the course of employment with the city."); MSO § 3-1-23(J) ("The entire grievance resolution procedure shall operate without discrimination, restraint, coercion or reprisal on the part of any supervisor or employee."). In addition, several provisions of the MSO are designed to ensure that the hearing officer not be subject to improper influence. See, e.g., MSO § 3-1-25(E) ("No person shall attempt to influence a Personnel Hearing Officer's findings and conclusions pursuant to this article *433 **514 except when doing so openly during a hearing."); MSO § 3-1-25(D) ("A Personnel Hearing Officer shall not be actively involved in partisan political activities or the political affairs of the city."). Lastly, the operating rules for hearing officers promulgated under this scheme require the personnel hearing officer to be impartial. See Albuquerque, N.M., Personnel Board Rules of Procedure for Class I Grievance Hearings, Rule 9(N) (revised Jan. 10, 1995) ("The hearing officer shall not participate in any adjudicatory proceeding if, for any reason, the hearing officer cannot provide a fair and impartial hearing to either party.") (emphasis added); see also id. Rule 9(O) ("No person shall discuss the merits of any pending adjudicatory proceeding with the designated hearing officer ... unless both parties or their representatives are present."). A personnel hearing officer who is in fact impermissibly biased is in violation of the MSO and its rules. Therefore the alleged bias, if it exists, renders the ultimate grievance decision "arbitrary or

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

capricious," and/or "otherwise illegal." See MSO § 3-1-23(D)(5)(a)-(c) (judicial review of Board decision appropriate where decision is arbitrary or capricious, otherwise illegal, or beyond its statutory authority); Las Cruces Prof'l Fire Fighters v. City of Las Cruces, 123 N.M. 239, 245, n. 3, 938 P.2d 1384, 1390 n. 3 (Ct.App.1996) (bias that would violate due process would also render resulting decision "arbitrary, capricious or an abuse of discretion").

## D. Objective Test for Bias

[8] 15. We take this opportunity to clarify when a personnel hearing officer should disqualify himself or herself, or when a reviewing tribunal should order a disqualification for possible bias. Chavez argues that the mere appearance of bias, without more, is not a sufficient basis for disqualification of the hearing officer. Chavez also argues that because in this case the hearing officer concluded, and the City specifically failed to dispute, that the hearing officer could be fair, the city cannot show actual bias as a matter of law. The City argues that because the record reveals what a reasonable person would perceive as bias on the part of the hearing officer, he should have disqualified himself, subjective beliefs aside. We agree with the City's position.

[9] 16. In order to guarantee that the City receives a fair hearing, we hold that where a reasonable person would have serious doubts about whether the hearing officer could be fair, it is inappropriate for the hearing officer to hear the case. This "objective appearance of fairness" test originates with Reid, in which our Supreme Court stated:

The inquiry is not whether the Board members are actually biased or prejudiced, but whether, in the natural course of events, there is an indication of a possible temptation to an average man [or woman] sitting as a judge to try the case with bias for or against any issue presented to him [or her].

92 N.M. at 416, 589 P.2d at 200. This "objective" test is referred to in a line of cases following Reid. See, e.g., Santa Fe Exploration Co., 114 N.M. at 109, 835 P.2d at 825 (quoting the same language from Reid ); Varoz v. New Mexico Bd. of Podiatry, 104 N.M. 454, 459, 722 P.2d 1176, 1181 (1986) (citing the test from Reid but noting that bias issue not preserved for appeal); Lujan, 100 N.M. at 150, 667 P.2d at 457 (citing the "appearance of bias" and "possible temptation to try the case with bias" standard from Reid ); Board of Educ., 106 N.M. at 132, 740 P.2d at 126 (citing to Reid test, although not

reaching the bias issue). This standard is in essence a paraphrase of a federal statute governing the disqualification of judicial branch judges, see 28 U.S.C. § 455(a) (1994) (A judge "shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned."), as well as New Mexico's Code of Judicial Conduct dealing with disqualification of state judges, see NMRA 1997, 21-400(A) ("A judge is disqualified and shall recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned....").

17. Finally, we note that the Tenth Circuit recently held that personnel hearing officers who hear grievances under the City's MSO are entitled to absolute immunity from damages actions under 42 U.S.C. § 1983 **515 *434 (1994). Saavedra v. City of Albuquerque, 73 F.3d 1525 (10th Cir. 1996). The Tenth Circuit based its holding on the fact that a hearing officer's "duties and the procedures employed are functionally comparable to those of a court of law." Id. at 1530. Saavedra and similar federal cases granting absolute immunity to administrative hearing officers are also illustrative of the important policy of protecting the city, like individuals, from impermissible hearing-officer bias. In Saavedra, the Tenth Circuit reasoned that administrative hearing officers are due immunity because "[t]he nature of the process is such that [a] terminated employee will often have a strong incentive to sue the [Personnel Hearing Officer] or the Board should either issue an adverse decision, and therefore a strong likelihood of lawsuits ... might produce a hidden bias in favor of the aggrieved employee." Id. The Tenth Circuit held that this potential "hidden bias" constituted one of those "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business." Id. at 1529 (quoting Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)). The same policy that led the court in Saavedra to grant immunity to hearing officers justifies our holding today.

18. We do not agree with Chavez that a party must show actual bias. An analysis of the hearing proceedings in this case illustrates why that standard is simply too difficult to meet. The City moved for the hearing officer's disqualification early in the hearing, arguing to the hearing officer that "the appearance of bias" was a sufficient basis for the hearing officer to disqualify himself, based on Reid. At this point in the proceedings the City had no way

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

of knowing, much less proving, whether "actual" prejudice due to bias would result. If we were to adopt Chavez's argument and require the City at the hearing below to prove to the hearing officer that the hearing officer was actually biased, we would be essentially requiring the City, already in the unsavory position of attempting to persuade the factfinder that he was unsuited for the task, to convince the hearing officer he was wrong in his subjective opinion that he could be fair. Alternatively, under Chavez's standard we might require the City to go through the entire hearing process and then on appeal attempt to prove "actual" bias resulted. In contrast, by adopting an "objective" test for bias, we provide both the hearing officer below and a reviewing court with a workable standard. Therefore we hold that the City, like an individual, can expect a hearing officer to disqualify himself or herself for bias when a reasonable person would have serious doubts about whether the hearing officer could be fair. This standard was met in this case, and the hearing officer should have disqualified himself.

III. CONCLUSION

19. Based on the foregoing, we affirm the district court and remand for a fair hearing before another hearing officer.

20. IT IS SO ORDERED.

HARTZ, C.J., and WECHSLER, J., concur.

END OF DOCUMENT

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

SOLID WASTE DRIVERS' ASSN. VS. ALBUQUERQUE, CITY OF

<DOCKET-NUM> 96-1421

<TYPE> CIVIL

<NAME> SOLID WASTE DRIVERS' ASSN. VS. ALBUQUERQUE, CITY OF

<JUDGE> John E. Conway

<DATE-FILED> 1997/03/11

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SOLID WASTE DRIVERS' ASSOCIATION,

DAVID A. WHITTEN, Chairman, et al.,

Plaintiffs,

vs. CIV 96-1421 JC/LFG

CITY OF ALBUQUERQUE, et al.,

Defendants.

MEMORANDUM OPINION

THIS MATTER came on for consideration of (1) Defendants' *Motion* for
Summary Judgment as to Plaintiffs' 4th Amendment Claims; (2) Defendants' *Motion* for Summary
Judgment as to Claims of Plaintiffs Who Are Not Solid Waste Department Drivers Subject to Random
Drug Testing; (3) Defendants' *Motion* for Summary Judgment on Count II for Alleged Denial of Due
Process and Equal Protection; and (4) Defendants' *Motion* to Dismiss Individually
Named Defendants, all filed February 19, 1997. The Court has reviewed the motions, the memoranda
submitted by Defendants and the relevant authorities. The Court has not reviewed any memoranda on the
behalf of Plaintiffs because Plaintiffs' counsel has failed to submit response briefs. The Court finds that
Defendants' Motions for Summary Judgment as to Plaintiffs' 4th Amendment Claims and on Count II for
Alleged Denial of Due Process and Equal Protection are well taken and will be granted. Defendants'
remaining two motions will be denied as moot.

Background

The facts of this case are not in dispute. Plaintiffs, Albuquerque city garbage truck drivers, are
challenging the constitutionality of the City's random drug testing policy. In August 1996, the City
implemented a random drug testing program for "safety sensitive" positions. This included refuse drivers
in the Solid Waste Department. Refuse drivers possess a commercial driver's license and operate on
nearly every street throughout the city and its outskirts. The drivers challenge the constitutionality of this
program on the basis that it constitutes an illegal search under the Fourth Amendment, as well as being

Attachment H

program on the basis that it constitutes an illegal search under the Fourth Amendment, as well as being violative of their Fourteenth Amendment Due Process and Equal Protection rights.

Analysis

A. Standard for Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 321-323 (1986). Once the movant has made such a showing, the adverse party "may not rest upon the mere allegations or denials of [ their] pleading[s], [they] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In reviewing a summary judgment *motion*, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, Frandsen v. Westinghouse Corp., 46 F.3d 975, 977 (10th Cir. 1995), even when it is produced by the moving party." Buchanan v. Sherrill, 51 F.3d 227, 228 (10th Cir. 1995). " Summary judgment is only appropriate if`there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Biester v. Midwest Health Services, Inc., 77 F.3d 1264, 1266 ( 10th Cir. 1996) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Thus, to defeat a summary judgment *motion*, the non-movant `must do more than simply show that there is some metaphysical doubt as to the material facts.'" Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986)). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 at 249-250 (citations omitted).

B. Defendants' *Motion* for Summary Judgment as to Plaintiffs' 4th Amendment Claims

Plaintiffs claim that the City's random drug testing program violates the Fourth Amendment of the United States Constitution and the New Mexico Constitution. The City first responds that Plaintiffs' cause of action based upon the New Mexico Constitution is pre-empted by federal law. Second, the City maintains that their random drug testing program is a valid constitutional search under the Fourth Amendment of the United States Constitution.

1. Pre-emption

The United States Constitution and the laws promulgated thereunder are the supreme law of the land. U.S. Const. art. VI. "The underlying rationale of the pre-emption doctrine . . . is that the Supremacy Clause invalidates state laws that interfere with or are contrary to the laws of congress." Chicago & N.W. Transp. Co. v. Kalo Brick and Tile Co., 450 U.S. 311, 317 (1981). The supremacy of federal law overrides state constitutional provisions as well as state statutes. Id. It is important to note that a "state provision is only pre-empted to the extent that it actually conflicts with federal law." Dalton v. Little Rock Family Planning Servs., ___ U.S. ___, 116 S. Ct. 1063, 1064 (1996).

The City argues that its random drug testing policy is mandated by the Omnibus Transportation Act of 1991 (Act). See 49 U.S.C. § 31306 ( Secretary of Transportation must prescribe regulations regarding drug and alcohol testing of commercial drivers). Pursuant to the Act, the Federal Highway Administration promulgated rules requiring drug and alcohol testing of drivers who possess a commercial driver's license. These rules apply to all employers, including States "that owns . . . a commercial vehicle or assigns employees to operate a commercial motor vehicle." 49 C. F.R. § 382.107 (1995). The Act contains

employees to operate a commercial motor vehicle." 49 C. F.R. § 382.107 (1995). The Act contains express pre-emption language. It states that:

A State or local government may not prescribe or continue in effect a law, regulation, standard or order that is inconsistent with a regulation prescribed under this section. However, a regulation prescribed under this section may not be construed to preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury or damage to property.

49 U.S.C. § 31306(g). The pre-emptive language of this statute is clear, and any provisions in conflict with it are thus pre-empted. Therefore, Plaintiffs' claims based upon the New Mexico Constitution are pre-empted and shall be dismissed.

2. The Fourth Amendment

Since 1989, the Supreme Court has addressed the issue of drug testing and the Fourth Amendment three times. See Skinner v. Railway Labor Executives' Assoc., 489 U.S. 602 (1989); National Treasury Employees Union v. Von Raab, 489 U.S. 656 (1989); and Veronia Sch. Dist. 47J v. Acton, ___ U.S. ___, 115 S. Ct. 2386 (1995). In each case, the Court weighed the governmental interest in conducting the search against the individual privacy interest implicated by the search to determine whether the search was constitutional.

In Skinner, the Federal Railroad Administration promulgated regulations that mandated drug and alcohol testing of certain employees who had been involved in train accidents. In determining that the search did not violate the Fourth Amendment, the Court concluded that the governmental interest of ensuring safety could present a special need justifying a departure from the usual warrant and probable cause requirements for a search. 489 U.S. at 620. Further, the Court held that in limited circumstances where the privacy interests implicated by the search were minimal and where an important governmental interest was furthered, a search could be reasonable despite the absence of individualized suspicion . Id. at 624. In essence, the Court in Skinner found that the governmental interest in enhancing and protecting public safety was compelling enough to allow drug testing without individualized suspicion.

Similarly, in this case, the governmental interest is the protection of the public. The Solid Waste Department trucks weigh approximately 40,000 pounds and operate on practically every street in the city, the two federal highways that pass through the city, and certain roads outside the city limits. Clearly these trucks outweigh the vast majority of cars with which they share the road. From the years 1990 to 1996, Solid Waste Department trucks were involved in thirteen accidents, seven of which resulted in fatalities. One of these fatalities was a Department driver whose body showed traces of marijuana and cocaine. Further, between 1994 and 1996, fourteen employees tested positive for either drug or alcohol use, including one employee who had been involved in a serious accident.

This governmental interest of public safety must be balanced against the drivers' privacy interest. Since all of these drivers possess a commercial driver's license, they are already required to submit to a drug test every time their license is renewed. Nonetheless, this is different from the City's plan of random drug testing. Under the City's plan, drivers could be summoned to give a drug test with no more than two hours' notice. Moreover, since the selection is totally random, one driver could be selected repeatedly while another not selected at all. This all leads to the conclusion that random drug testing is in fact intrusive. However, the question is not whether it is intrusive, but rather whether the governmental interest in random drug testing outweighs the individual's privacy interest. In this case, it is clear that the City's substantial governmental interest in protecting not only the public, but its own drivers as well, outweighs the limited intrusion on the drivers' privacy interests. Therefore, Defendants' *Motion* for Summary Judgment as to

Summary Judgment as to
Plaintiffs' Fourth Amendment Claims shall be granted.

C. Summary Judgment On Count II For Alleged Denial of Due Process and Equal Protection

1. Equal Protection

Count II of Plaintiffs' Complaint alleges violations of the Fourteenth Amendment Equal Protection clause. "The equal protection clause is triggered when the government treats someone differently than another who is similarly situated." Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth., 933 F.2d 853, 859 (10th Cir. 1991). It is unclear from the Complaint or the pleadings what Plaintiffs' basis is for their claim. In actuality, the Complaint is entirely devoid of any reference to an equal protection violation except to say that the City's actions deprived them of their constitutional equal protection rights. While it is true that being a member of a "suspect class" is not a prerequisite to an equal protection claim, some description of unequal treatment is necessary. Plaintiffs' mere conclusory allegations fail to state a cause of action for violation of the equal protection clause of the Constitution. Therefore, Plaintiffs' equal protection claim shall be dismissed.

2. Due Process

Plaintiffs' Complaint alleges two types of violation of their procedural due process rights. The first claim alleges that an employee is terminated upon a positive drug test without due process of law. The second deals with drivers not being able to challenge their classification as employees in a "safety sensitive" position.

The Fourteenth Amendment to the Constitution provides that no state shall deprive any person of life, liberty or property without due process of law . U.S. Const. amend XIV. In examining a procedural due process claim, the Court must conduct a two-step inquiry. "The first question is whether the plaintiff has a property or liberty interest protected by the Constitution." Russo v. White, 775 F. Supp. 639, 644 (S.D.N.Y. 1991). If Plaintiffs do have a protected interest, "the second step is to determine whether the defendant deprived the plaintiff of that interest." Id.

a. Termination after Positive Drug Test

In this matter, the first question is easily answered that, yes, Plaintiffs do have a protected interest. Their property interest is that of maintaining their employment. However, when examining whether the City has deprived Plaintiffs of their protected interest, the answer is no. If a driver has not tested positive for drugs or alcohol, then he has not been deprived of his interest because he has not been terminated from his employment. Consequently, Plaintiffs who have not tested positive fail to satisfy the test for a violation of their procedural due process rights. Therefore, their due process claims shall be dismissed.

In addition, the due process claims of all Plaintiffs who have tested positive shall be dismissed. Not one Plaintiff who has tested positive was fired. Instead, all received a twenty-day suspension and were enrolled in the City's Employee Assistance Program for counseling. Further, not one of these Plaintiffs attempted to exhaust his procedural rights by appealing the sanction. Therefore, the procedural due process claims for all Plaintiffs who have tested positive shall be dismissed.

b. Challenging Designation

Plaintiffs' next procedural due process claim is that they are not allowed to challenge their classification as employees in "safety sensitive" positions. This assertion is plainly wrong. To the contrary, Administrative

employees in "safety sensitive" positions. This assertion is plainly wrong. To the contrary, Administrative Instruction No. 7-1-1M specifically allows employees who are designated as "safety sensitive" thirty days to appeal such designation to the Director of the Human Resources Department. In fact, two Solid Waste Department drivers who were designated as "safety sensitive" have appealed that decision. Since Plaintiffs are allowed to challenge their designation, and some drivers already have, it is clear that there is no procedural due process violation. Therefore, Plaintiffs' due process claims for not being able to challenge their designation shall be dismissed.

D. Remaining Motions

Since this Court will _**grant**_ summary judgment against Plaintiffs on their
substantive claims, Defendants' remaining motions are moot, and will therefore be denied as such.

E. Local Rule

As of this date, Plaintiffs' counsel has failed to file a response brief in opposition to Defendants' motions. Local Rule 7.5(b) provides that "[f] ailure to serve (or file, if required by these rules) a response in opposition to any _**motion**_ constitutes _**consent**_ to _**grant**_ the _**motion**_. In
essence, the Court did not have to engage in its detailed analysis of the issues in order to _**grant**_
Defendants' motions. However, given the
significance of the constitutional issues presented, the Court independently examined the issues in order to ensure Plaintiffs of a judgment on the merits. Having said this, Plaintiffs' counsel is put on notice that this type of behavior is not acceptable and will not be tolerated in the future.

An order in accordance with this opinion shall be entered.

---

CHIEF UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

Paul _Livingston_

Albuquerque, NM

Counsel for Defendants:

Charles Kolberg

Assistant City Attorney

Albuquerque, NMUNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SOLID WASTE DRIVERS' ASSOCIATION,

DAVID A. WHITTEN, Chairman, et al.,

Plaintiffs,

vs. CIV 96-1421 JC/LFG

CITY OF ALBUQUERQUE, et al.,

Defendants.

ORDER

THIS MATTER came on for consideration of Defendants' various Motions for Summary Judgment, filed February 19, 1997. A memorandum opinion was entered this date.

Wherefore,

IT IS HEREBY ORDERED that Defendants' *Motion* for Summary Judgment as to Plaintiffs' 4th Amendment Claims be, and hereby is, granted and Count I of Plaintiffs' Complaint is dismissed with prejudice.

IT IS HEREBY FURTHER ORDERED that Defendants' *Motion* for Summary Judgment On Count II For Alleged Denial of Due Process And Equal Protection be, and hereby is granted and Count II of Plaintiffs' Complaint is dismissed with prejudice.

IT IS HEREBY FURTHER ORDERED that Defendants' *Motion* for Summary Judgment As To Claims of Plaintiffs Who Are Not Solid Waste Department Drivers Subject to Random Drug Testing be, and hereby is, denied as moot.

IT IS HEREBY FURTHER ORDERED that Defendants' *Motion* To Dismiss Individually named Defendants be, and hereby is, denied as moot.

IT IS HEREBY FURTHER ORDERED that the trial set for March 17, 1997 be, and hereby is, vacated.

DATED July 28, 1998 _____, July 28, 1998.

_____

CHIEF UNITED STATES DISTRICT JUDGEE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**BENJAMIN J. CHAVEZ and**
**VIOLA F. CHAVEZ,**

        **Plaintiffs,**

vs.                                                                 **No. CIV 96-1656 SC/JHG**

**BENNETT PROPP, CARMELITA HOUTMAN, and**
**DEBI McNEIL,**

        **Defendants.**

## <u>MAGISTRATE JUDGE'S PROPOSED FINDINGS</u><br><u>AND RECOMMENDED DISPOSITION</u>

    This matter was referred by the Honorable Santiago E. Campos, United States District Judge, to the undersigned to conduct a show cause proceeding to determine whether this lawsuit was filed for an improper purpose. On September 11, 1998, Plaintiffs and Mr. Livingston were ordered to appear and show cause why Mr. Livingston had not violated Rule 11(b). Paul Livingston and Gerald Hopkins appeared on behalf of the Plaintiffs. John McCall appeared on behalf of Mr. Livingston. Cindy Lovato-Farmer and Michael Gross appeared on behalf of the Defendants.

    On August 19, 1997, Judge Campos granted defendant's motion to dismiss. On September 18, 1997, Defendants filed a motion for attorney fees pursuant to 42 U.S.C. §1988 and plaintiffs filed a notice of appeal. On October 10, 1997, Judge Campos granted Defendants' motion for attorney fees, finding the complaint was frivolous, unreasonable and without foundation. Judge Campos ordered Defendants to submit briefs, affidavits and exhibits in support of their claim for attorney fees and allowed Plaintiffs the opportunity to respond. In response, Plaintiffs filed a suggestion of lack of

# ATTACHMENT "Β"

jurisdiction due to their notice of appeal. In the October 10, 1997 Memorandum Opinion and Order, Judge Campos also referred the case to the undersigned to make findings and recommendations as to possible sanctions under Rule 11. Defendants have not filed a motion for Rule 11 sanctions.

On May 7, 1998, Judge Campos found the District Court has jurisdiction to act on attorney fees and Rule 11 sanctions while the appeal is pending. After disallowing some of the claimed hours and costs, Judge Campos awarded the defendants $5,871.50 in attorney fees and costs. Judge Campos stated "[o]n the sanctions issue, it is my intent that the magistrate judge will conduct a show cause proceeding to determine whether this lawsuit was filed for an improper purpose." Judge Campos stated the issue to be determined in the Rule 11 proceeding is "whether plaintiffs and/or their counsel filed this case in federal court for the purpose of harassing the defendants or to cause needless expense."

Judge Campos noted if Rule 11 violations are found, an appropriate sanction against Plaintiffs' attorney would be the payment of Defendants' attorney fees and costs in this case. He also observed that while many hours were disallowed, some of those hours might appropriately be ordered paid as sanctions. He stated "[b]ecause there might be some overlap between the sanctions and the fees, and because the culpability of counsel may exceed that of the clients, I will stay the imposition of a fee award pending the determination of appropriate sanctions under Rule 11, if any are found." On May 26, 1998, Plaintiffs appealed the May 7, 1998 Memorandum Opinion and Order.

On May 29, 1998, the first show cause hearing was held. At the first hearing, Mr. Livingston argued the order setting the hearing was not a show cause order and failed to specify which party had the burden of production and proof. Therefore, the undersigned ordered the attorneys to submit simultaneous briefs on whether an Order to Show Cause is required and who has the burden of going

2

forward at hearing. Defendants submitted a brief and Plaintiffs submitted a brief and response. After analyzing the briefs and response, the undersigned determined Plaintiffs and Mr. Livingston had the burden of going forward to show, by a preponderance of the evidence, why sanctions should not be imposed for violation of Rule 11 (b). Fed.R.Civ.P. 11 (c)(1)(B). Therefore, a second order to show cause was entered, reiterating Judge Campos's directives, describing the specific conduct at issue and directing Mr. Livingston to show cause why he has not violated Rule 11 (b). Fed.R.Civ.P. 11 (c)(1)(B); *Merriman v. Security Ins. of Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996). The second order to show cause clearly stated Plaintiffs and Mr. Livingston had the burden of going forward to show by a preponderance of the evidence why sanctions should not be imposed. The second show cause hearing was held on September 11, 1998.

Judge Campos found the "complaint was frivolous, unreasonable, and without foundation" and stemmed from a "fundamental lack of evidentiary support for their federal claims, rather than a mere technical failure capable of being remedied by amendment." The issue therefore at the second show cause hearing was whether plaintiffs and/or their counsel filed this case in federal court for the purpose of harassing the defendants or to cause needless expense.

At the hearing, Mr. Livingston testified he had been an attorney since 1982, and was familiar with the federal rules of civil procedure. Transcript of Hearing of September 11, 1998, (Tr.) 101-102. Mr. Livingston testified he believed the procedures in the First Judicial District Court of New Mexico to be "truly corrupt." Tr. 103. He testified he had tried between 40 and 50 civil rights cases and had read hundreds of cases on the subject of civil rights. Tr. 130; 134. Mr. Livingston considered himself to be one of the experts on res judicata and collateral estoppel. Tr. 149-150. Mr. Livingston testified he did not appeal the state court adverse rulings because such an appeal would have been "futile."

3

Tr. 130.

In evaluating whether Rule 11 sanctions are appropriate, the court should consider the effect of the improper conduct on the litigation process in time or expense, whether the person responsible is trained in the law, and the degree of sanctions necessary to deter similar activity in the future. 5A, Wright, Miller, Fed. P. & Pro 2d § 1336 (1998 Pocket Part). It is axiomatic that the federal district court has no authority to review final judgments of a state court in judicial proceedings. *Razatos v. Colorado Supreme Court*, 746 F.2d 1429, 1432 (10th Cir. 1984). It was not proper for Mr. Livingston to file the complaint in federal court merely because he considered the state court procedures "truly corrupt." Moreover, the undersigned notes Mr. Livingston's characterization of the procedures of the First Judicial District Court as corrupt is beyond the bounds of propriety and should not be tolerated. The federal complaint was clearly frivolous, unreasonable and without foundation. Mr. Livingston's improper filing of the complaint in federal court had the result of causing unnecessary and excessive expenses to Defendants, their attorneys and this Court. Mr. Livingston, as an experienced attorney trained in the law, should have been aware the federal complaint was frivolous and without foundation when he filed it. Mr. Livingston filed this case in federal court for the purpose of causing needless expense.

In order to deter Mr. Livingston from filing frivolous lawsuits in the future, he should be sanctioned. Judge Campos noted if Rule 11 violations were found, an appropriate sanction against Mr. Livingston would be the payment of some of the disallowed attorney fees and costs in this case. The undersigned agrees. An additional $2,000.00 in attorney fees would be sufficient to deter Mr. Livingston from filing frivolous lawsuits in the future. Therefore, sanctions in the amount of $2,000.00 in attorney fees should be assessed against Mr. Livingston pursuant to Rule 11.

4

In arriving at the figure of $2,000.00, the undersigned followed the lodestar method of multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir. 1995). The undersigned finds an award for an additional fourteen hours of Ms. Lovato-Farmer's time spent on the underlying litigation is reasonable under the circumstances. The undersigned further finds an award of an additional five hours of Mr. Gross' time spent on the underlying litigation is reasonable under the circumstances.

In an affidavit in support of Defendants' Brief in Support of Reasonable Attorney Fees filed October 24, 1997, Mr. Gross averred his hourly rate was $120.00 and Ms. Lovato-Farmer's hourly rate was $100.00 and these were the prevailing market rates in the Albuquerque, New Mexico community for attorneys of similar experience. Judge Campos has determined these rates are reasonable and in accordance with the prevailing market rates in the community. The undersigned fully concurs with this determination. Multiplication of the applicable reasonable rates to the additional reasonable hours pursuant to the lodestar method results in the amount of $2,000.00 as additional attorney fees. This amount should be assessed as sanctions against Mr. Livingston pursuant to Rule 11.

The Plaintiffs acted on advice of their attorney, Mr. Livingston, with respect to filing the complaint in federal court. Testimony adduced at the second hearing established that the Plaintiffs are not trained in the law. The attorney fees and costs already assessed by Judge Campos should be adequate to deter any future abuse of the legal process by Plaintiffs. Therefore, additional Rule 11 sanctions should not be imposed on the Plaintiffs.

# RECOMMENDATION

Mr. Livingston should pay $2,000.00 in attorney fees to the Defendants as sanctions pursuant to Rule 11. This amount should be in addition to, and independent from, the attorney fees and costs awarded to Defendants by Judge Campos.

JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

# NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to **28 U.S.C. § 636 (b)(1)**, file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.